Davis *vs.* Irwin.

No. 26.—DAVID J. DAVIS, plaintiff in error, *vs.* JANE IRWIN, defendant in error.

[1.] *Where a Sheriff sold negroes under executions, at a Sheriff's sale, and delivered one of the negroes to the purchaser, with the understanding that the Sheriff was to call at a certain bank the next morning, and receive a check for the purchase money; when the Sheriff called at the bank next morning, for the check, it was refused, under instructions from the purchaser, because the negro had runaway, or been carried off, the night before: Held, that the Sheriff was liable to be ruled, at the instance of the defendant in the executions, for the balance of the purchase money of the slaves, after paying off the amount thereof, and costs: Held, also, that the delivery of the slave to the purchaser, by the Sheriff, under the circumstances before stated, was a matter exclusively between the purchaser and the Sheriff, with which the defendant in execution had no concern, although her agent was present when the arrangement was made between the purchaser and Sheriff.*

[2.] *When a rule is made absolute against a Sheriff, for the payment of money, an attachment cannot issue thereon against him, until he is first called on to shew cause why an attachment should not issue.*

Rule against a Sheriff, by defendant in *fi. fa.* for surplus of sale. Decision in Bibb Superior Court, at July Term, 1849, by Judge FLOYD.

D. J. Davis, Sheriff, levied certain *fi. fas.* upon certain slaves of Jane Irwin, and in May, 1849, he sold Kitty, Mary, and Polly. The proceeds were enough to pay off the *fi. fas.* in hand, (and perhaps other claims assented to by defendant,) and then to leave a surplus in his hands. He was ruled, by defendant, to pay over to her said surplus. . Davis showed for cause, that by consent of plaintiff and defendant, he levied on certain slaves—among them, Kitty, Mary and Polly; that after the levy, they agreed that Scott Cray should take possession of, and hire out said slaves, for defendant's sole use; that after doing so for some time, said Cray became tired of the trust; that it was then agreed that Wm. Collins should hold them, upon a like trust, and who did so until the day of sale, when said slaves were brought forward by said Wm. Collins, and sold at the prices named, (in said showing,) and that he disposed of the proceeds of Kitty and Mary, but that Polly was not paid for; that she was bid off by A. H. Chappell, and delivered to him in presence of said Collins; that said Collins at-

tended and managed said sale ; that he, Davis, had not had the custody or control of said slaves after the levy, and was not considered, by either party, as responsible therefor ; that the purchaser, when Polly was bid off, in the hearing of Wm. Collins, gave her directions where to go—saying he would send there for her next morning, and telling the Sheriff he would leave a check for the purchase money, next day, at a particular bank agency, and requested him to call and get it ; that he did call, and it was refused, because, as was said, the purchaser had so instructed, upon the ground that said Polly had run away, or was carried off in the interim ; and that he, Davis, had not then heard of the slave, or received the purchase money.

Sheriff's counsel moved to discharge the rule (the showing not being controverted)—

1st. Because it did not appear that said Sheriff was in contempt of said Court, or of its legitimate authority.

2d. Because the Sheriff, in the whole matter, acted as the private agent of the parties, at their mutual request, and not in his official character as Sheriff, and if liable at all, is not so in this form of action.

Which motion the Court overruled, and passed an order making the rule *nisi absolute*, that the money be paid in sixty days, *or* that an attachment *instantly* proceed, ordering that, in such event, he be committed without bail, &c.

To which last named rule, or order absolute, Sheriff's counsel excepted, on the ground that the Court erred in granting an attachment absolute, without first calling on the respondent by an attachment *nisi* : and further, because it nowhere appears that said officer was in contempt of the process of the Court.

S. HALL and STUBBS, for plaintiff in error, cited—

*Gorham vs. Gale,* 7 *Cowan,* 739.   *Bethune vs. Bonner,* 2 *Kelly,* 169.   *Richmond vs. Bowditch,* 1 *Mees. & Wells.* 40.   1 *Tidd. Pr.* 480.   *Prince's Digest,* 430, 431, 432.

McDONALD and POWERS, for defendant.

*By the Court.*—WARNER, J. delivering the opinion,

Davis *vs.* Irwin.

[1.] It appears, from the record, that the plaintiff in error sold certain negroes, as Sheriff of Bibb County, belonging to the defendant, by virtue of certain *fi. fas.* placed in his hands against her. After paying off the *fi. fas.* and costs, there remained a balance in the hands of the Sheriff, arising from the sale of the defendant's property. A rule *nisi* was taken against the Sheriff, at the instance of the defendant, calling upon him to shew cause why he should not pay over to her the money remaining in his hands, arising from the sale of her property, after paying off the executions, &c. The Sheriff shewed for cause, that at the time of the sale, one Collins acted as the agent of defendant ; that a slave, by the name of Polly, was bid off by A. H. Chappell, and was delivered to him by the Sheriff, in the presence of defendant's agent ; that Chappell directed the slave so purchased by him, to procure a dray, and take her things to Dr. Lamar's residence, and that he would send for her next morning—at the same time, Chappell informed the Sheriff that he would leave a check for the purchase money of said slave with N. C. Munroe, at the Agency of the Mechanics' Bank at Macon—requesting the Sheriff to call the next morning and get it ; that when the Sheriff called for the check the next morning, Munroe refused it, under Chappell's instructions, upon the ground that said negro ran away, or was carried off, during the previous night. For the Sheriff, it is insisted, that he is not liable to be ruled for the money in his hands, at the instance of the defendant in execution, and that if he is subject to be ruled at her instance, that her agent being present, and cognizant of all the foregoing circumstances, her assent thereto will be presumed, and constitute a good defence for the Sheriff, against the rule. The fact that the defendant's agent was present at the time the arrangement was made between the Sheriff and the purchaser of the slave, for the payment of the purchase money, is no defence for the Sheriff. Had the defendant herself been present, she would have had no right to interpose any objections to any stipulation or agreement that the Sheriff and the purchaser of the slave might think proper to have made, as to the payment of the purchase money, or as to the delivery of the slave. The title of the defendant was divested by the Sheriff's sale, and she or her agent had nothing more to do with the property. If the Sheriff thought proper to deliver the property to the purchaser, without payment of the purchase money,

Davis *vs.* Irwin.

he did so upon his own responsibility ; that was a matter between himself and the purchaser, with which the defendant in execution had no concern.    The Sheriff was responsible to the persons interested, for the proceeds of the sale; and the 49th and 52d sections of the Judiciary Act of 1799, are sufficiently broad, as regards the liability of Sheriffs in this State, to authorize the Court to entertain a rule for money raised by virtue of a sale under executions, at the instance of a defendant in such executions. *Prince*, 431, '2.

[2.] The Court below made the rule absolute against the Sheriff, for the payment of the money within sixty days, and in default of such payment, ordered an attachment instantly to issue against him, and that he be committed, without bail or mainprize, until the payment thereof.   The error alleged to the judgment of the Court below is, that after the rule was made absolute against the Sheriff, for the payment of the money, an attachment was ordered to issue against him, without first calling on the Sheriff to shew cause why the attachment should not issue against him. This objection, we think, was well taken.   After the rule was made absolute, and the Sheriff ordered to pay over the money, the *stringent* process of attachment ought not to issue against him until he has first been heard, or at least, had an opportunity of being heard; for the reason, he may have good cause to shew why he should not be attached and imprisoned.   This appears to have been the practice in England ; and we think it is the most reasonable and better practice.   See *Richmond vs. Bowditch*, 1 *Meeson & Welsby's Rep.* 38.

On the last ground taken, the judgment of the Court below must be reversed.