ANDREW J. SMITH, plaintiff in error, *vs.* FRANK M. McLEN-DON, sheriff, defendant in error.

1. When an attachment for contempt is issued on a rule absolute, under section 3956 of the Code, after return into the clerk's office of a prior execution levied on land, the execution and the levy are both *functus officio*. It is not indispensable to the legality of the attachment, that the levying officer should have made an entry dismissing or otherwise disposing of the levy.

2. When the original rule *nisi* against an attorney at law requires cause to be shown, both against making the rule absolute and against being attached for contempt, an attachment may be ordered when the rule absolute is granted.

3. After rule absolute and before attachment, the voluntary bankruptcy of the attorney, and the usual assignment of his effects, will not prevent the attachment from issuing. Nor will the pendency of the bankruptcy proceedings protect him from arrest and imprisonment by virtue of the attachment; nor will a judge, at chambers, discharge him on *habeas corpus* because he testifies that he is utterly unable to pay the amount of the rule, or any part thereof.

4. The imprisonment of a faithless attorney for contempt, committed by failing to respond to his client on a rule absolute for the money of his client which he has collected and not paid over, is not imprisonment for debt, and is not prohibited by the constitution.

5. When the court has granted a rule absolute and ordered attachment to issue, no further order from the judge is necessary; and the clerk, not the judge, should issue the attachment.

6. On *habeas corpus* at chambers, it is not competent to inquire into the truth of the facts adjudged by the rule absolute.

*Habeas corpus.* Attachment. Contempt. Executions. Bankrupt. Attorney and client. Constitutional law. Before Judge CLARK. Webster County. At Chambers. May 18, 1877.

Reported in the opinion.

HAWKINS & HAWKINS; COOK & CRISP, for plaintiff in error.

GUERRY & SON, for defendant.

33

BLECKLEY, Judge.

Judge CLARK, sitting at chambers, in Americus, Sumter county, heard a writ of *habeas corpus* and the return thereto, the object of the proceeding being to free from imprisonment in the jail of Webster county, an attorney at law, who was in custody under an attachment founded upon a rule absolute granted by Webster superior court. Discharge under the writ was denied, and the prisoner was remanded. This is assigned as error.

From the record, it appears that the proceedings prior to application for the writ of *habeas corpus*, were as follows: At March term, 1873, of Webster superior court, a rule *nisi* was granted against the attorney, at the instance of one of his clients, calling upon him to show cause why he should not pay over certain money which (as was alleged) he had collected for the client, or why the rule should not be made absolute, "and he be attached for contempt of court." The attorney answered, denying that he had collected the money. The answer was traversed, and a verdict sustaining the traverse was rendered. On that verdict, the court, on the 11th of October, 1875, made the rule absolute, ordering the money to be paid over in five days, and in default of payment, that the clerk issue an attachment in terms of the law. This was affirmed in the supreme court, (see 58 *Ga.*, 121). The clerk of Webster superior court, on the 23d of October, 1876, issued a *fieri facias* upon the rule absolute, and the same was, on the 31st of October, levied by the sheriff upon certain land as the property of the attorney, the property, according to the sheriff's entry, being pointed out by the client. No disposition of this levy appears. The property was of sufficient value to pay the debt. On the 8th of January, 1877, the attorney was duly adjudged a bankrupt; and on the 13th of the same month, his effects, with the usual reservation of exemptions, were assigned by the register to an assignee in bankruptcy. On the 11th of May, 1877, the clerk of Webster superior court issued an

attachment on the rule absolute, the sheriff having previously, at the instance of the client, returned the *fieri facias* into the clerk's office, with no entry thereon, except the levy as above stated. On the 12th of May, the attorney was arrested on the attachment, by the sheriff, and lodged in the common jail of Webster county.

The petition for *habeas corpus* was by a third person, on the prisoner's behalf, and was presented on May 15th, 1877. It alleged that the imprisonment was illegal: first, because execution had been sued out against the property, and levied, and the levy not disposed of; second, because the attachment issued without a rule *nisi* to show cause against it, and the prisoner has had no opportunity to show cause why attachment should not issue; third, because of the adjudication of bankruptcy, on his own petition, and the assignment thereunder of all his estate, real and personal, the proceedings being still pending, and no discharge from his debts having yet been granted; fourth, because, under the constitution and laws, there can be no imprisonment for debt; fifth, because no attachment for contempt has been issued, or ordered to be issued, by the judge of the superior court. The sheriff of Webster county, to whom the writ of *habeas corpus* was directed, produced the body, and made a return in writing, setting up the attachment as his warrant for the arrest and detention. At the hearing, which took place on the 18th of May, the prisoner testified that he had no property whatever; that he was unable to pay the debt; and that he did not have one cent, and could not raise it. He offered to prove that he had not, in fact, collected the money for which the attachment issued; which offer was rejected, and its rejection is complained of as error.

1. That the attachment was issued while there was the form of a levy upon property, and that levy not, in form, disposed of, is an objection of much plausibility and of some difficulty. The Code, § 3956, declares that "the plaintiff may have either an attachment or an execution issued from said rule absolute, and may have either of said processes re-

turned, and the other issued at pleasure." The word returned, as here used, certainly includes manual delivery into the clerk's office, and the question is, whether it necessarily means anything more. The statute does not expressly re-quire that the ·sheriff shall make any entry, or that he shall do anything to prepare the execution to be returned. On looking to 11 *Ga.*, 460, we find that returning an execution is held to be a separate and distinct thing from making an entry upon it, and that it is an act in *pais*, and may be proved by parol. It was there ruled, that the sheriff's entry of *nulla bona* was not, in its date, even *prima facie* evidence of the time of the actual return of the *fi. fa.* It would seem to follow that an execution· may be returned in a way to ex-change it for another process, by simply bringing it back to the clerk's office and restoring it to the clerk who issued it. This was done in the present case before the attachment issued. For perfect regularity, the sheriff ought to have dismissed.the levy and stated the reason therefor in an ap-propriate entry. But his failure to do so was but an irreg-ularity, and was an omission that might be supplied by an entry *nunc pro tunc.* Instead of the levy operating to de-feat the attachment, we think the attachment, when issued, operated to defeat the levy. When the plaintiff had the *fi. fa.* returned and the attachment issued, he abandoned the levy. The *fi. fa.* itself expired by operation of law, and, of course, the levy expired with it. Both of them be-came *functus officio.*

2. The objection that the attachment issued without a rule *nisi* to show cause against it, and that no opportunity was afforded to show cause why it should not issue, is an-swered by the fact that the original rule *nisi* called upon the attorney to show cause, not only why the rule should not be made absolute, but why he should not be attached for contempt of court. This was sufficient. 57 *Ga.*, 161. In view of the section of the Code above cited, which makes the right of the plaintiff to have an attachment a legal conse-quence of granting a rule absolute, in any and every case,

there would seem to be little or no scope for a rule to show cause as to anything beyond the rule absolute. What cause could be shown, in the face of the express statutory declaration that the plaintiff may have either an attachment or an execution, and may have one returned and the other issued at pleasure?

3. The bankruptcy of the attorney, on his own petition, and the assignment of his effects, other than the exemptions allowed by law, and even his inability, according to his own testimony, to pay any part of the debt, would not render his imprisonment illegal; and that was the sole question for trial on the return of the *habeas corpus.* The imprisonment was under a lawful judgment of the superior court of Webster county. The judge, sitting at chambers in another county, to hear and determine a *habeas corpus*, could not vacate or modify that judgment, or arrest its lawful enforcement. If the attorney should obtain a discharge in bankruptcy, and should make his *bona fide* insolvency appear to the superior court of Webster, the court of whose process he is in contempt, what will, or ought to be, the order of that court in reference to his imprisonment, need not now be anticipated. Absolute inability to pay, when made manifest to the reasonable satisfaction of the court whose dignity and authority are concerned, will, it is to be presumed, have its due influence on that tribunal, in expediting his restoration to liberty. Perpetual imprisonment, except of the contumacious, whose will refuses to second their ability, is not to be contemplated as likely to occur in a remedial proceeding by a court of justice.

4. Imprisonment under an attachment for contempt, to compel obedience by an officer of court to a lawful order to pay over money which he has collected in the course of his official or professional duty, is not imprisonment for debt. It is sound disciplinary dealing with an unruly member of the forensic household. One who lives and moves within the precincts of the court misbehaves, to the injury of a person who has trusted him, and whose confidence he

has abused, and the court orders him to make redress. He refuses, and the court, as the minister of law, chastens him by imprisonment, and endeavors to coerce obedience. It is true, he is a debtor; but he is more than a debtor—he is an assistant in the affairs of justice, and as such, bears a peculiar and special relation to the law. Through that relation the court acts upon him, treating him, not as a mere debtor who will not pay, but as a domestic of the law who refuses to obey his master.

5. What is meant by the fifth point in the petition for *habeas corpus*, is not precisely clear. The attachment, it is true, was not issued by the judge; but is not the clerk the proper officer to issue such a process? We think so. And the suggestion that the judge would have to order it issued, is based on no law or practice that we are aware of. There was an express order by the court, as a part of the rule absolute, that an attachment should issue unless the money was paid in five days. We cannot suppose that any further order was necessary, especially as the Code itself gives direction in the matter.

6. Finally, the exclusion of evidence to controvert the finding of the jury on the issue of the attorney's original default, was certainly not error. It cannot be that such a question was open to inquiry on the hearing of a *habeas corpus*. The rule absolute rested on the verdict, and we cannot see how it was possible to go behind the rule absolute, to say nothing of going behind the verdict.

Cited for plaintiff in error: Code, §3956; 22 *Ga.*, 375; 23 *Ib.*, 381; Tidd's Practice, 1019; Code of 1863, §3555, *et seq.;* Code, §5010; 44 *Ga.*, 220; 6 *Ib.*, 575; 2 *Kelly*, 220; 26 *Ga.*, 139; 1 Bailey, 605; 8 *Ga.*, 156; 8 Bank. Reg., 312; 4 *Ib.*, 667; Bankrupt Manual, 62, clause 119; 5 Ired., 259; 38 *Ga.*, 75; 57 *Ib.*, 24.

For defendant: Code, §§407, 3949; 1 Bailey, 605; 2 *Kelly*, 220.

Judgment affirmed.