## SCOFIELD *vs.* GASKILL *et al.*

A security on an official bond, who aids the principal in the breach thereof, is not entitled to contribution from a co-security for damages consequential upon said breach.

Principal and surety.   Before Judge HILLYER.   Fulton Superior Court.   October Term, 1877.

Reported in the opinion.

D. F. & W. R. HAMMOND, for plaintiff in error.

B. F. ABBOTT; JOHN A. WIMPEY, for defendants.

JACKSON, Judge.

Varney A. Gaskill and Lewis Scofield were two of the securities on the bond of Foster Blodgett, for the due performance of all his official duties as superintendint of the Western and Atlantic Railroad, the property of the state, and at that time under the management of the state.  Blodgett sold some iron to Scofield at private sale, belonging to the road, and took his notes therefor, payable to Blodgett or bearer, which were discounted at bank by Blodgett, and the money not accounted for by Blodgett to the state, but made way with by him.  Scofield paid the money to the state, and took control of the *fi. fa.* which the comptroller general, under the statute, had issued against Blodgett and the sureties on his bond, and had the same levied upon certain property of Gaskill, the co-security, which was claimed by C. B. Gaskill, for himself, and as next friend and agent of relatives of his, and a bill was filed in aid of this claim.

The property was found not subject to the *fi. fa.* in the control of Scofield and pressed for his benefit; a motion was made for a new trial by Scofield, the motion was overruled, and he excepted.

The question is, was the property rightfully found not subject to the *fi. fa.* for Scofield's benefit?

In the view which we take of the case, it is unnecessary to consider many points made in the record, as in our judgment one alone is conclusive of the issue.

Section 1004 of the Code declares that " whenever any iron, or any tackle or apparel may become useless to the

road, and the superintendent cannot have the same converted into new iron on reasonable terms, or for any other good reason, he shall sell the same at public outcry, at whatever point it may be most to the interest and convenience of the road, to the highest bidder, after giving at least thirty days notice of the time and place of said sale, with a description of the property in a public gazette at Atlanta." The next section, 1005, declares that " he may sell said property for cash or credit, as in his discretion it may be best for the state : *Provided*, that if on credit, it shall not be longer than twelve months, with note or bond and personal security thereto, payable to the governor and his successors in office, or bearer, which shall be deposited in the state treasury, and when collected to be part of the net earnings of the road." Section 1007 enacts that " the superintendent shall keep a record of all such property sold, to whom sold, at what price, and on what terms, and shall embrace the same in his report to the governor."

The obligation of Blodgett was to do all this in the event that he sold the iron of the road ; and the obligation of Scofield was, that he would see to it that Blodgett sold the iron in this way, and according to these directions laid down explicitly in the statute. The proof is, that Blodgett broke his bond in that he sold the iron when it was at Scofield's mill to be converted into new iron on reasonable terms; in that he did not sell it at public outcry, nor to the highest bidder; in that he did not advertise it for thirty days, with a full description of the property, and in a public gazette in Atlanta; in that he did not take the note payable to the governor and his successors, but to himself, and did not deposit it in the state treasury, but discounted it in bank and appropriated the proceeds to his own use ; and the proof is, that Scofield, instead of discharging his obligation to see to it that Blodgett did these things, helped Blodgett break the bond by buying the iron from him himself, and giving him his notes at thirty days, payable to Blodgett instead of to the governor, and thus enabled Blodgett all the easier to

discount the paper, to appropriate the money, to make no record thereof, and to violate his obligation to the state, which Scofield guaranteed that Blodgett would not do.

Nor does it appear that the iron was useless, and could not be converted into good iron on reasonable terms. On the contrary, the iron was at the mill of Scofield, under contract to be re-rolled and made good and useful to the road, whensoever it should need it.

So that the legal question made by the facts is this : Can a surety, who himself aided the principal in breaking the bond, which he had insured that his principal would not break, recover, in any form, contribution from a co-surety who was wholly innocent of participating in the breach which caused the default of the principal ?

We cannot see a particle of law or equity in the claim. Scofield was *particeps criminis* in the breach of the bond. Blodgett broke it by his aid. If Scofield had held Blodgett to the contract for re-rolling the iron, then Blodgett could not have broken the bond by its unlawful sale. If Scofield had not bought the iron from Blodgett, the latter could not have readily found a purchaser for it, because the owners of such re-rolling mills as Scofield possessed, alone had use for such iron, and there was no other such mill in Atlanta, where the iron was, but Scofield's.

However all that may be, it is clear that Scofield assisted Blodgett in the breach of the bond, that Gaskill was wholly innocent of any participation in this breach, and that there cannot be any principle of law or equity, or common sense and justice between man and man, which will entitle a guilty security to exact from an innocent security contribution for damage which resulted from his guilt in helping the common principal break to the bond.

The cases read by the able counsel in either of the two cases which turn on the same question, and which are relied upon by them in behalf of Scofield, do not, we think, apply to the facts of this transaction. In one of those cases the surety merely encouraged the principal to dissipate and gamble without participating therein and getting part of the

spoil ; and in the other, the sum of the decision is, that it cannot avail to discharge a surety who has expressly bound himself for a person's doing certain things, unless it can be shown that the party taking the security has by his conduct, either prevented the things from being done, *or connived at their omission,* or enabled the person to do what he ought not to have done, or leave undone what he ought to have done, and that but for such conduct the omission or commission would not have happened." See 1 White & Tudor's Lead. Cases in Eq., 96 ; 3 Clark & Finelly, 542.

Squaring this case by the principle extracted above, we think if it were applicable to a case of contribution between co-securities, that Scofield could not recover from Gaskill, because by his conduct he prevented Blodgett from doing what he ought to have done ; or if he did not prevent him, he certainly connived at his omitting to do what he ought to have done, in advertising and selling the property at public outcry, and he enabled Blodgett to do what he ought not to have done, that is, to take the note payable to himself, for Scofield signed and gave Blodgett that note, and but for Scofield's conduct in participating in the sale, Blodgett could not have done what he did do, nor could he well have omitted to do what he should have done.

It would be inequitable and impolitic to allow a surety so acting, and bound up in the transaction which broke the bond, with his principal, after paying the damage which his own conduct was instrumental in causing, to recover from his co-sureties, who were innocent, their *pro rata* of the loss he sustained, and thus making them help him pay that loss which he, by his own violation of law, had incurred.

For this reason, and on this ground, the judgment is affirmed.