## McLendon *vs.* Harrell.

If a sheriff violates his duty, and as a result is imprisoned for contempt, he cannot recover damages from another, on the ground that he was induced to adopt such line of conduct by the false and fraudulent representations of the defendant and promises to protect him, and by the false representation that a check given in payment for land bought at the sheriff's sale would be paid. To allow official misconduct to be the basis of a recovery against a coadjutor therein, however guilty the latter might be, would be contrary to public policy.

Actions. Damages. Officers. Before B. P. Hollis, Esq., Judge *pro hac vice.* Webster Superior Court. April Term, 1881.

McLendon *vs.* Harrell.

Reported in the decision.

JNO. R. WORRILL, for plaintiff in error.

HAWKINS & HAWKINS, for defendant.

JACKSON, Chief Justice.

This action was dismissed on demurrer. The substance of the declaration is that the sheriff, who is plaintiff, was ruled for money—the price of property of a defendant in execution, which was bid off by the defendant, Harrell, and to whom the sheriff made a deed for the property; that he was sent to jail for failure to pay the money over under the rule; that the defendant was a claimant of the fund which the land brought, and induced the sheriff to believe that he would certainly get the money under superior liens which he held, if the sheriff should be ruled for, it by other claimants. and thus got him, the sheriff, to receive a check on a bank in Americus in lieu of the cash, representing the check to be good, assuring him that it would be paid and promising to see to it that the sheriff should not be hurt, but the money would be paid for the property sold by him, Harrell, in any event; that Harrell, notwithstanding all these promises, instructed the bank not to pay the check, and failed and refused to pay the money, whereby the plaintiff was attached for contempt, put in jail court week for several days, lost the profits of his office during that time, suffered much in body and mind, and was brought into public odium and contempt, to his and his family's disgrace, and to his damage ten thousand dollars.

Unquestionably the sheriff would be entitled to recover unless the claim be illegal, because against public policy. Is it against public policy, and therefore illegal? If he was induced to do an unlawful act in the regular course of his official business by the promises, or entreaties, or arrangements of anybody whereby he became guilty of

contempt of court, and subjected himself to an attach-
ment for contempt, we do not think that the law will per-
mit him to make a gain out of his own illegal conduct, or
that the law will indemnify him for imprisonment and de-
privation of his office occasioned by his own dereliction
of duty, though that dereliction of duty was caused by
the representations of another ever so false and fraudu-
lent. Was it a dereliction of duty for the sheriff to make a
deed to property he sold, until the money was paid? and
was the money paid by a check on a bank in another
county? There can be but one answer to these questions.
The very fact that the court convicted him of contempt
in disobeying its mandate and imprisoned him therefor
during the very week when his services were needed at its
regular session, is conclusive that he did violate the law
and incur its severest penalty. Shall he make this pun-
ishment for contempt of the court the means of enriching
himself? Shall he indemnify himself by appeal to law for
violations of law? Though the man who thus induced
him to act, according to the allegations of the declaration,
which must be taken as true, may have used the most
fraudulent, deceitful and false arts, in order to induce ille-
gal conduct in its sworn officer, the law will not allow that
officer to shield himself behind the bad conduct of another
from the penalties of its violation, nor will it permit its
officer to recover damages where he is *particeps* in that
violation. No man can do wrong and recover from a co-
adjutor in that wrong. No man can be convicted of a
crime, or *quasi* crime, or violation of official duty, and re-
cover damages from him who was accessory before the fact
to the crime, or violation of duty, for the very punishment
which the law affixed to the crime or violation of duty.
We know no exception to this fundamental principle of
public policy in all civilized states; and the very last case
in which any exception should be made to it is that of an
officer of the law itself, sworn to adhere to it and execute
its mandates at every hazard. And however guilty

another may be, though he be really more guilty than its officer, and though by his treachery and falsehood to word and plighted faith, the officer's dereliction to duty was exposed and he was punished; such conduct in another will not paliate or atone for the officer's own disobedience. The guilt of another, even if double-dyed, cannot be set off or recouped against his own; much less can the penalty for that guilt be recovered in damages from a coadjutor therein.

Of all officers of the law sheriffs should be freest from favoritism and partiality, and on no occasion, and in the discharge of no duty of their responsible office, should they be more so than in public sales. Cash, not credit, is that which the law requires them to exact from every bidder, and no man's note, or check, or draft, is, in the cold and impartial eye of justice, the equivalent of cash. Once relax the rule, and the gate to collusion and fraud is swung back so wide that an ocean of corruption would enter, and the fairness of public sales would be at an end. Arrangements might be made to credit one to his advantage and to the disadvantage of all others, and the sheriffs would be tempted to violate the law in order to put money in their own pockets; or would be careless to execute it at public sales if a rich bidder promised to pay at court; and if he fail to do so and the sheriff be punished for contempt by imprisonment, the sheriff could recover damages from the man he favored, and be thus indemnified for the very penalty which the law affixed for its violation by its own officer. If when the sheriff failed to respond to a money rule and was imprisoned therefor, he could recover damages for that imprisonment from one who deluded him into the illegal act which caused it, of course the measure of damages would be in proportion to the extent of his sufferings and the length of the imprisonment; and thus the law would actually give him a premium to hold out against its mandate as long as humanity could endure the confinement in order to recover

heavier damages. Its whole reason and spirit and policy, it appears to us, forbid that such result should flow from persistent contempt of its authority. 8 *Ga.*, 153 ; 19 *Ib.*, 298 ; 30 *Ib.*, 653. These cases show that it is illegal for the sheriff to take a check on a bank or note, that he does so at his peril, and is liable for the money on a rule therefor, with all its consequences, including attachment and imprisonment for contempt.

In the strong cases put in this opinion, and the severe terms used, it is not intended to animadvert on the conduct of either party in this cause, but to show to what extent the principle might be carried, if once established ; and thus to show that the principle which would be established, if a recovery in damages could be had for the imprisonment and sufferings incurred by this sheriff, by reason of his own malfeasance, though prompted by another, would lead to the most disastrous results, and open a wide field for corruption and fraud, and is thus in the teeth of public policy.

Nor is it meant to intimate that the sheriff cannot recover the amount of the check or draft given him by the defendant, with interest and costs ; but it is meant to rule, and to that full length it goes, that in no case, where the sheriff or any officer of the law who violates it and is put in jail by its authority for that violation, can he recover damages for that imprisonment from anybody, though the person he sues, and from whom he would recover such damages, fradulently and deceitfully deceived him, and violated solemn assurances in not coming to the officers relief and paying him what he promised, and thus saving him from the imprisonment. To authorize the recovery would be contrary to public policy, and therefore illegal. 60 *Ga.*, 277 and 450 are on the general line of this view of the law, and throw light on the matters herein discussed. See also 9 *Ga.*, 137.

Judgment affirmed.