HALL, sheriff, *et al. v.* MARTIN.

No. 9690.  JUNE 16, 1933.

*T. B. Higdon,* for plaintiffs in error.  *Weekes & Candler,* contra.

GILBERT, J.  C. O. Martin filed a petition addressed to Hon. John B. Hutcheson, Judge of the Superior Court of DeKalb County, alleging in substance that the petitioner was illegally restrained of his liberty, being confined in the common jail of the county; that he was restrained by J. R. Hall, sheriff and jailer of said county; that the cause or pretense of such restraint by the said Hall was "under a commitment by P. L. Harrison, said to be the recorder of the Town of North Atlanta, but no copy of any charges were presented to your petitioner at the time of the arrest or at any subsequent time.  It is not definitely known to the petitioner upon what charge he is being detained."  The petitioner further alleges that he offered to make bail, which had been refused by P. L. Harrison and J. R. Hall.  The petition prays for the writ of habeas corpus directed to the said sheriff, and that until a hearing petitioner be allowed to make bond.  The writ was issued, and provision made for a hearing.  The bill of exceptions recites that at said hearing the respondent moved to quash and dismiss the writ of habeas corpus, on the ground that the petitioner was in the custody of the sheriff under a charge of contempt, and on the further ground that the petition did not set out the commitment or process under which

the petitioner was being restrained. The court overruled the motion, and the respondents excepted. The court then proceeded to hear evidence. The court restricted the evidence to the sole question of whether or not the detention of the petitioner was legal or illegal, stating that the court was not concerned whether the petitioner was guilty or not guilty. The respondent excepted to the refusal of the court to hear evidence showing the circumstances "under which said charge was made and petitioner taken into custody," insisting that it was "material to the case to show whether or not petitioner was illegally committed and whether or not the recorder in imposing the fine for contempt was exercising the discretion vested in him. Respondents proposed to show that the contempt with which petitioner was charged was committed in the presence of the recorder's court of North Atlanta," it being insisted that the contempt occurred in the presence of Harrison, recorder of North Atlanta, while the said recorder was holding court and in his presence. One question propounded was whether or not "the contempt in question was outside the jurisdiction of the court or in the presence of the court." The court refused to admit the evidence, and the respondents excepted. The petitioner contended that no warrant or other process had been served upon him, showing the offense with which he was charged. The respondents offered the evidence showing those facts, saying: "We would like to show that the contempt was committed in the immediate presence of the court, thereby doing away with the necessity of any process." The court ruled: "If the contempt is committed in the presence of the court, there is no service necessary. If it is committed outside, he has to be brought into court and charged. The judge would have the right in his own court to punish for contempt of court, and then the judge would sign an order committing him to jail." The respondents excepted to the refusal to allow the testimony.

Evidence was then introduced. The petitioner testified that he was in the recorder's court of North Atlanta on April 3, 1933; that there was a friend of his "under arrest there; had him a girl." He also testified that he had not "been presented with any papers giving" him "any idea of what kind of offense" he was charged with; that he had received no notice. J. R. Hall, sheriff, testified that he was also jailer of the county and had petitioner in his custody; that he was "held on a contempt charge;" that he did not remem-

ber who made out the commitment papers. He further testified: "Mr. Harrison told me to hold him for contempt of court." There is some evidence that the original papers charged petitioner with disorderly conduct, but were subsequently changed to contempt of court. P. L. Harrison, recorder of the municipality of North Atlanta, testified that he ordered the commitment of the petitioner and wrote "on the back of . . police-court ticket what the charge was for, contempt of court. The officer made out the ticket." He testified to his official position, and that Martin was sent to the jail in the custody of the marshal of North Atlanta. This testimony was corroborated by C. E. Walden, marshal of North Atlanta. The marshal also testified that at the time the sentence was imposed "there was such a squabble over there. There was a fight." The marshal also testified that he made out the "ticket," referring to the paper under which the petitioner was committed; that Harrison, the recorder, was present at the jail when it was made out, and wrote the charges on the back of the ticket. John O. Owen, an attorney, testified that he read a card on the desk at the jail; "it was disorderly conduct;" that the sheriff told him he was holding him [Martin] on contempt. He also testified: "As to what the fine was imposed for at North Atlanta, whether disorderly conduct or contempt, the recorder said, 'You are fined $100 for contempt of court; $100 or thirty days.'" The jail ticket or card was introduced in evidence, showing the name of the petitioner, his address, description of him, and showing that the sentence was for contempt of court, and on the back was written: "4-3-33. Fined $100.00 or 20 days in County Jail. Harrison."

It is clear from the facts stated above that the judgment of the court was founded solely on the fact that the commitment called in the record "ticket" or "charge," and which was signed "Harrison," did not also designate him as "Recorder of North Atlanta." In other words the court held that the petitioner was committed by an individual, and not by the presiding officer of the recorder's court of the municipality of North Atlanta. The petition, properly construed, alleges that he was committed by the recorder of North Atlanta. An evasive allegation must be construed most strongly against the pleader. The evidence establishes beyond question that he was committed by Harrison in his official capacity, and that he was committed for contempt in the immediate presence of the court

officers, while holding his court. The petition is evasive in that the petitioner failed to state the facts which he must have known. The petition alleged that P. L. Harrison was "said to be recorder of the Town of North Atlanta." He knew or could easily have learned the facts before filing his petition. He alleges that "it is not definitely known to petitioner upon what charge he is being detained." His petition does not make it clear whether he was committed for direct contempt of the court or for some contempt which would be properly designated as civil contempt. The respondent was refused the privilege of introducing evidence intended to show the nature of the contempt. If the evidence does not demand a finding that petitioner was sentenced for a direct contempt, the court erred in rejecting evidence offered to show that petitioner was guilty of contempt to and in the presence of the court. "The writ of habeas corpus is a collateral remedy; and under the well-established rule that a judgment of a court of competent jurisdiction can not be collaterally impeached, it results that, no question of jurisdiction being raised or involved, a conviction or commitment for contempt can not be reviewed by means of this writ." Rapalje on Contempts, 222, § 55. The jurisdiction of the recorder's court of North Atlanta to punish for contempt as in this case is not questioned. Habeas corpus is not available to make a collateral attack on a judgment for contempt. For that reason the court erred in discharging the petitioner.

There is an additional reason why the judgment was erroneous. Penal Code (1910), § 1305, is as follows: "No person shall be discharged upon the hearing of a writ of habeas corpus in the following cases, to wit: . . (5) Where the party is in custody for a contempt of court, and the court has not exceeded its jurisdiction in the length of the imprisonment imposed." There is a clear distinction between a case where one has been imprisoned for a direct contempt of the court and other cases where the contempt is not of the court itself nor in its presence. The sections of the Code and the decisions of the courts of this State cited by the defendant in error apply to the latter class of cases. For instance, defendant in error cites *Smith* v. *McLendon, 59 Ga.* 523. That was a case where an attorney had been imprisoned after being attached for failure to pay over to a client money which he had collected. Also *State* v. *Bandy, 2 Ga. Dec.* 40. That was a case where one was

bound over for larceny. Petitioner's counsel in their brief say: "The court below held properly, this defendant in error insists, when he ruled as follows: If the contempt is committed in the presence of the court, there is no service necessary. If it is committed outside, he has to be brought into court and charged. The judge would have the right in his own court to punish for contempt of court, and then the judge would sign an order committing him to jail." This is in accord with the contention made by counsel for plaintiff in error, and with the law as we understand it. Consequently there is no difference of opinion on the question that where the contempt is direct or in the presence of the court, no service of any commitment is necessary.

*Judgment reversed. All the Justices concur, except Russell, C. J., who dissents.*