## BUNKLEY v. THE STATE.

October 17, 1892.

## BUNKLEY v. THE STATE.

While the direct evidence was conflicting and the circumstances not quite conclusive, the jury having found the accused guilty, and the trial judge being satisfied with their verdict, this court will not interfere with his discretion in refusing a new trial.

October 31, 1892.        ·        *Judgment affirmed.*

Before Judge COBB. City court of Clarke county. June term, 1892.

Frank Bunkley was indicted for obstructing legal process. He was found guilty; his motion for new trial was overruled, and he excepted. The grounds of the motion were, that the verdict was contrary to evidence and without evidence to support it, decidedly and strongly against the weight of evidence, and contrary to law and the principles of justice.

The evidence for the State, briefly stated, was: Porter was a constable. There was placed in his hands a possessory warrant sued out against Strickland, for a dog claimed to belong to Billings. Porter summoned Billings to go with him, and they went to Strickland's residence after dark. Strickland was sitting on his steps and some one was with him, but Porter could not tell who it was. When told that Porter had a warrant

for the dog, Strickland said Porter was not going to get him. Porter put his hands on Strickland and told him if he could not get the dog he would take him, Strickland. About that time some women ran out screaming, grabbed Billings and carried him off. Strickland jumped up, ran his hand in his pocket and commenced pulling back into the house, dragging Porter, and when they got to the house some women screaming caught Porter and wrenched his stick out of his hands. Porter heard the blows of the stick rattling on the cross-piece of the door; the door was too low for it to hit him. Just then some one behind Porter jerked him loose from Strickland, and immediately afterward the defendant came between Porter and Strickland from the left. Porter did not speak to him, nor he to Porter. Porter shot him, and he slipped off and Porter did not see him again. Then Strickland started towards Porter, and Porter shot him, not knowing what he was going to do. He then carried Strickland on and put him in jail. There was no child near defendant or Strickland at any time, and Porter did not see any child there at all. There was some light in the house.

For the defence Strickland testified : He was sitting on his doorsteps, and Mat. Bunkley was with him. Porter and Billings came up, and Porter said he had come after the dog. Strickland said, " Very well, Mr. Porter." Porter said, " It is stolen property too." Strickland told him it was not, and Porter grabbed him and struck him over the head. Strickland pulled loose and started in the house to get his hat, and Porter shot him. When Porter told Strickland he wanted Strickland to go with him, Strickland told him all right, and went in the house to get his hat. After he shot Strickland, the defendant, who lived a short distance from Strickland's, came in to get his little child who was there, and Porter shot him. Defendant was not there

when Porter came, and was not doing anything to Porter when shot. He took his child by the hand and carried it home. There are two rooms in the house. After Strickland was shot they took him on to jail, and out at the gate defendant came up and asked Porter why Porter shot defendant, saying he just went in to get his child; and Porter made no reply. Strickland asked Porter why Porter shot him, and Porter said he did not know what Strickland was going to do. Defendant is Strickland's son-in-law.—Other witnesses introduced by the defendant corroborated Strickland as to defendant not having anything to do with obstructing the execution of the process, as to his not being present when Porter came up, as to defendant coming to get his child and taking her away, etc. There was some discrepancy in their testimony as to what transpired between Porter and Strickland, but they all agreed that Strickland did not resist. One of them testified that several women were there, and there was much noise and shoving and pushing. Another testified that there were no women there at all, and all those who said there were had told lies. There was also testimony corroborating Strickland as to what occurred after the difficulty between Strickland, Porter and defendant at the gate. The defendant made a statement to the effect, that when he heard a gun or pistol fired and a great deal of noise up at Strickland's, his child being up there, he went there to get it and bring it home; that when he got there he found Porter and Strickland in the house, started to get his child and Porter shot him; that he took his child by the hand and carried it home; that he did not do anything to Porter, was not trying to do anything or intending to do anything to him when Porter shot him; and that he did not know there was any difficulty until he got there.

McCurry & Proffitt, for plaintiff in error.
Sylvanus Morris, solicitor, by brief, contra.