### TUGGLE *v.* TUGGLE.

Under the facts of this case the trial judge abused his discretion in awarding the possession of the child in controversy to the mother instead of the father. Looking solely to the interest and welfare of the child, it is manifest that, as between the two parents, the latter and not the former was entitled to its custody.

January 20, 1896.

*Habeas corpus.* Before Judge Westmoreland. City court of Atlanta. July 17, 1895.

*Rosser & Carter* and *Bishop, Andrews & Hill,* for plaintiff in error. *James & Bell,* contra.

SIMMONS, Chief Justice.

Section 1794 of the code declares that "in cases of separation of the parents, . . the court, upon writ of *habeas corpus,* may exercise a discretion as to the possession of the child, looking solely to his interest and welfare." This does not mean an arbitrary or unlimited discretion, but a "discretion guided and governed by rules of law."

*Lindsey* v. *Lindsey*, 14 *Ga.* 657, 660; *Miller* v. *Wallace et ux.*, 76 *Ga.* 479(2). Under the facts of the present case as they appear from the record, we are constrained to hold that the court below erred in awarding the custody of the child to the mother. It is undisputed that she abandoned both the child and the father, and went to a distant city where she resided for a considerable length of time, her traveling expenses being paid by another man upon her promise that she would live with him. Several witnesses testified that her general reputation was bad. She had no means of her own, was not in any employment by which she could support the child, and was dependent on her father and mother, who were in very moderate circumstances. On the other hand it appeared that the father of the child was an industrious, well-to-do man, who was earning a good salary and owned some real estate; that he was foreman of the shops of the Western & Atlantic Railroad Company, and had been continuously for twelve years in the employment of the company. He had always provided well for the support and comfort of his wife and child, and according to the testimony of a number of witnesses, some of whom had lived in the same house with him, he was of good character and habits, and not addicted to the drink habit, though he occasionally took a drink and on a few occasions had taken too much. When his wife left him he placed the boy, who was then about nine years old, with the family of his brother, a clergyman in good circumstances, where he was well treated and cared for, and was being prepared for school; and he was there when the wife obtained possession of him surreptitiously. The wife testified that her husband had cursed in the presence of the child; but her parents testified that she sometimes used "bad language" herself when the child was present. The wife testified that on one occasion she had seen him make amorous demonstrations towards another woman, and that he sometimes drank to excess. Her parents also testified as

to his drinking to excess. It will be seen, however, that while there is some evidence derogatory to the father, it appears that he was not only, generally speaking, a man of good habits, but was well able to provide for the child, and had always taken good care of him, and had him placed where he was receiving proper moral and educational training when the mother obtained possession of him; while on the other hand, the evidence is overwhelming and uncontradicted that the mother, both in view of her character and her want of means and ability to provide for the child, was an unfit person to be entrusted with his care and training. The boy, having passed the period of infancy, did not require the care and attendance of the mother to the extent which would be required in the case of a child of more tender years. Looking solely to the interest and welfare of the child, we think it is manifest that as between the parents his custody should be awarded to the father.

*Judgment reversed.*