Sarah A. Lindsey *vs.* John A. Lindsey.

No. 81.—SARAH A. LINDSEY, plaintiff in error, *vs.* JOHN A. LINDSEY, defendant in error.

[1.] Though testimony be improperly admitted, yet, if it be not material, or if material, in favor of the party objecting, the judgment should not be reversed on this account.

[2.] Upon trial of a *habeas corpus*, sued out by one parent, for the purpose of obtaining from the other the possession of an infant child, the question, as to whom the same shall be awarded, is entrusted to the discretion of the Circuit Judge, before whom the writ is made returnable ; and it must be a flagrant abuse of that discretion, which will authorize a reviewing Court to interfere.

[3.] A party suing out a writ of error, is, strictly, not entitled to a *supersedeas*, until the bill of exceptions is filed.   But the proper practice, in cases where irreparable injury may result, by carrying the judgment instantly into effect, is, upon notice being given to the Court, that a bill of exceptions will be filed, to allow a reasonable time for this to be done, before the judgment is carried into effect.

Decision upon *habeas corpus*, by Judge IVERSON, in Superior Court of Muscogee county, May Term, 1853.

John A. Lindsey, by petition to the Court, showed that he married Sarah A. Jeffries in 1844, by whom he had one child, a female.   That his wife had abandoned him, against his consent, and was now living in a state of adultery, with another man.   That she had possession of his child, and prayed a writ of *habeas corpus*.

In return to the writ, Mrs. Lindsey admitted the marriage and the possession of the child ; averred that she left the house of petitioner, because of his ill-treatment, his incontinence, and

his failure to provide for her necessities; that she was informed and believed that Lindsey had obtained a total divorce from her, in the county of Jasper; that petitioner is very poor, and his mother, (with whom he lives,) unqualified to take care of a young female child, not yet five years old; that the mother of respondent, (with whom she lives,) owns several valuable negroes, and is able and willing to give every aid and assistance, in rearing the child, who needs, particularly, the care and attention of a mother.

Upon the hearing, petitioner proved facts going to show that Mrs. Lindsey was living in a state of adultery with another.

By a witness, Joseph Downs, it was also proven, that in a conversation with a man named Perry, at or near the house of the latter, he said the defendant was his wife, and that this occurred within twenty feet of where the defendant was sitting. At the same time, Mrs. Nancy Jeffries (defendant's mother) said Perry was her son-in-law. To the admission of this testimony, the counsel for plaintiff in error excepted.

After argument, the Court ordered the child to be delivered to the father, and counsel for the mother excepted.

Counsel offered to give bond immediately, so as to supercede the said judgment, until the final decision of the Supreme Court. The Court refused to allow the order stayed, in the way proposed; but passed an order giving the possession to the father, until the final determination of the case.

To this proceeding, counsel for respondent excepted.

Upon these exceptions error has been assigned.

DEVON, for plaintiff in error.

JOHNSON & PATTERSON, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] It is questionable, from the testimony, whether or not Sarah Lindsey was near enough to the witness, Downs, Perry and her mother, to hear the conversation which Downs says

occurred between himself and these persons. If she did not hear it, she was not bound by it. The witness says she was sitting about twenty feet from where the conversation took place; if so, it was possible for her to hear what was said, and so the Court may have thought, when the testimony was admitted.

But if this be not so, it occurs to us that what was then said, if at all material, was rather in favor of plaintiff in error.—— The statements amounted to declarations, that Perry called plaintiff in error his wife, and that Mrs. Jeffries, the mother, said he was her son-in-law. As the record shows, it was proven by another witness, that subsequently to her separation from the defendant in error, he had seen the plaintiff in error with a child not twelve months old, which she called "her baby"; and this child, it seems, must have been begotten and born since that separation. In asserting the relationship of wife with Perry, she was, at all events, claiming to live in a position with the probable father of this child, somewhat more respectable than shameless concubinage.

[2.] In a proceeding like this before us, the question, as to which parent is entitled to the custody of the child, is to be determined with reference to the welfare of that child, and is properly lodged in the discretion of the Circuit Judge, before whom the *habeas corpus* is made returnable. Unless there appears to be some flagrant abuse of that discretion, this Court will not interfere with the exercise of it. There is an obvious propriety in this. The Judge, in such case, is more of the vicinage, as it were, than this Court, has probably better opportunity of knowing the parties—their means, &c. He has them before him, and has the benefit of their demeanor and appearance, in aid of his judgment. So, of witnesses. He may be familiar with their reputations—looks them in the face when they speak —has the benefit of their conduct and appearance, and pronounces his judgment accordingly. For these reasons, a case of glaring error should be required, to authorize an interference, by us, with a judgment thus formed. Such, this case is not.

It is insisted, that by the return of the plaintiff in

error, it appears, that this defendant in error had treated her badly, while they lived together—had himself committed adultery—that *his* character was no better than it should be, and that, consequently, he was a very unfit person to have the custody of this infant daughter.

His return is the statement of the plaintiff in error, and is entitled to very little weight in the consideration of this question. But if its statements be admitted, we are not prepared to say that the decision was wrong.

Upon principles of abstract ethics, there may be no difference in the sin of the man and the woman, who violate the laws of chastity. In the eye of an omniscient God, the weak and erring woman may not be, (to say the least,) the more sinful and degraded of the two. But we do know, that in the opinion of society, it is otherwise. The man may notoriously sin in this regard; and yet, sometimes, retain a position of respectability, or *quasi* respectability, by means of which his relations and those of his family, with decent people, are maintained; his children may associate with such persons, and be educated to become good and useful members of society. But otherwise is it with the frail female; for when once she sins after this sort, she sins against society. Easy is the descent, with her, then, to an Avernus of utter and irremediable ruin, where her associations are with the vulgar, the vile and the depraved. If her children be with her, their characters must be, more or less, influenced and formed by the circumstances which surround them.

Even if it be admitted that there was proof before the Court, showing this father to have committed adultery, and to have been, himself, of habits more or less profligate, yet, the above considerations enable us to see, very clearly, how, compelled as the Judge was, to award this child to one of two exceptionable parents; and looking, alone, to its interests, he chose the father, as the least objectionable.

[3.] The Court committed no error which we can correct, when he refused to suspend his judgment, at the instance of the counsel for the plaintiff in error. His Honor was not com-

pelled to direct a *supersedeas*, until the bill of exceptions was filed; for the provision of the law is, that "the bill of exceptions shall operate as a *supersedeas* to the judgment, &c. in all cases where bond may be given, or affidavit filed," &c. No bill of exceptions was filed, and the judgment was not necessarily to be superceded until this was done.

Nevertheless, we think that the best and proper practice is, to suspend the judgment for the reasonable time which may be required to file the bill of exceptions, when notice is given by counsel that a bill will be filed, in all those cases where, if the judgment be instantly pronounced and carried into effect, the person in whose favor it is rendered, may put it out of the power of the other party, who is suing out his writ of error without delay, to be placed in the situation in which he was at the time of the judgment. It is said that this has been done in this case, by the removal of the child beyond the jurisdiction of the Court. Where it is possible that such a result may ensue, it is better that the short delay asked for should be granted. From this course, but slight injury can result, when serious and irreparable wrong may ensue from a different practice.

Let the judgment be affirmed.