W. A. WEHRMAN et al., Appellants, v. CLAUDE MOORE et al., Appellees.

**APPEAL AND ERROR: When Appeal Lies—Sale of Litigated Prop-**
1 **erty—Purchase Price in Escrow.** A properly perfected appeal from a judgment awarding defendant the rights of a pledgee may be maintained by plaintiff, even though it appears that plaintiff has sold his interest in the subject-matter of the litigation to an intervener, who has dismissed his appeal, when it appears that part of the purchase price is in escrow awaiting the outcome of the appeal.

**APPEAL AND ERROR: Perfecting Appeal—Acceptance of Service**
2 **—Authority of Attorney.** Notice of appeal is properly served on the attorney who appeared in the trial court. (Section 4114, Code Supplement, 1913.)

**APPEAL AND ERROR: When Appeal Lies—Reluctance of Appel-**
3 **lant to Maintain—Effect.** A properly perfected appeal is in no wise affected by the fact that appellant appears to have taken the appeal with reluctance.

**ATTORNEY AND CLIENT: Authority of Attorney—Intervention—**
4 **Service of Pleading.** Pleadings may very properly be served upon any attorney of record.

**APPEAL AND ERROR: Perfecting Appeal—Notice—Party Without**
5 **Interest.** A party who has parted with all interest in the subject-matter of the litigation need not be served with notice of appeal.

**COURTS: Jurisdiction—Writs to Preserve Appellate Jurisdiction—**
6 **Inherent Power of Court.** The Supreme Court, and any judge

thereof, aside from the Constitution (Article 5, Section 4) and aside from statute (Sections 4100, 4109, Code, 1897), has inherent power and a discretion, regulated by the *balance of inconvenience or injury* to the respective parties, to issue all writs and processes, either *commanding* or *restraining* action, necessary for the exercise and enforcement of the appellate jurisdiction of the court, and to preserve the *status quo* of the litigants, pending appeal.

PRINCIPLE APPLIED: Plaintiff owned certain stocks in a motor car company, and an automobile. Defendant claimed to be a pledgee of the property, to secure advances made. An intervener claimed to have purchased the property of plaintiff. Decree was entered in favor of defendant, fixing the amount of his lien. Plaintiff and intervener appealed. Defendant started to foreclose his lien. On application to a judge of the Supreme Court, and on a showing that the property was of a highly fluctuating value, an order was entered, not only commanding defendant *not* to proceed with his foreclosure, but commanding defendant *to surrender the property to the intervener*, upon the making by intervener of a named deposit in money with the clerk to abide the outcome of the appeal. *Held*, the order was within the jurisdiction of the court and judge, not only in so far as it *restrained* action, but in so far as it *commanded* affirmative action.

CONTRACTS: Action for Breach—Judgment—Merger of Contract
7  Rights. Contract rights are merged in the judgment obtained on the contract. Therefore, where a defendant secured a judgment that he was the pledgee of property, as security for advances made in a specified amount, *held*, no *contract* rights were impaired by the entry of an order, on appeal, commanding defendant *to surrender the property to the owner* on the owner's making a deposit with the clerk to abide the outcome of the appeal.

PRINCIPLE APPLIED: See No. 6.

*Appeal from Linn District Court.*—J. T. MOFFIT, Judge.

TUESDAY, SEPTEMBER 26, 1916.

LITIGATION was had in the district court of Linn County, resulting in decree that appellee Heins had the lien of a pledgee on certain property claimed by the plaintiff. The decree fixed the amount for which the lien was established and might be foreclosed. Heins was proceeding to foreclose.

Thereupon, the plaintiffs and the intervener perfected an appeal from said decree. Pending appeal, application was made to Benjamin I. Salinger, as judge of the Supreme Court of Iowa, to restrain Heins from thus proceeding, and to compel him, upon deposit with the clerk of this court of a sufficient amount to satisfy any judgment Heins might obtain on appeal, to surrender said property to intervener. An order to this effect was granted, and concurred in by Justices Deemer, Ladd and Gaynor. The deposit has been made and the order obeyed.

This is an original application in this court, in effect, to annul said order and to dismiss the appeal of the plaintiffs.— *Motion Denied.*

*R. S. Milner,* for appellants.

*Lewis Heins, pro se, C. E. Wheeler* and *M. P. Cahill,* for appellee.

SALINGER, J.—I. The intervener has dismissed his appeal. It is idle to go into the question of his motives for doing so. On the face of the record, an appeal remains on part of Wehrman and Trueblood. It appears

1. APPEAL AND ERROR: when appeal lies: sale of litigated property: purchase price in escrow.

from the record made on the granting of said order that one question involved is whether the award to Heins does not include some $1,400 usury. While Wehrman and Trueblood have sold to Grossman, $4,000 of the purchase price is in escrow, awaiting final determination of this appeal. Notwithstanding the dismissal by Grossman, then, plaintiffs have the right to maintain this appeal, and all arguments on whether they will or should be successful must be reserved for the final submission, and have no place in a motion to dismiss the appeal. This would, of itself, dispose of the claim that it was agreed between the partners and Grossman that part of the purchase price should be paid to satisfy the Heins decree

in full.   If such agreement is found proved on final submis-
sion, it may compel affirmance of the full allowance made
Heins below.   But whether such agreement was or was not
made is not now controlling as a reason for dismissing the
plaintiffs' appeal.   Moreover, all the record made on this
motion preponderates greatly against the claim that there was
such agreement.   It was apparent that Grossman would not
pay any of the purchase price until Heins released his lien.
Consequently, he did not, as is claimed, agree to pay over any
money before the lien was discharged.   Money that, confess-
edly, was not to be turned over until after Heins released, could
not have been available, as Heins says it was, to obtain the
release.   And there are letters in the record written by Heins
after the alleged agreement which are quite inconsistent with
his claim that he knew of and relied upon such an agreement.
There is other subsequent conduct on his part which is-incon-
sistent with this position.   Repeating: it is highly improbable
that Milner would be given money by Grossman to pay Heins
in full while the plaintiffs were quarreling with Heins and
with each other, and give it to him before release, when his
essential position was that he would pay no money until after
a release had been obtained.   Again, proof that there was
such an agreement would have been exceedingly material on
the application for restraining order.   It was so much dis-
cretionary that it may be doubted whether it would have
issued if a satisfactory showing had been made that the parties
seeking to stay enforcement had contracted to sell the prop-
erty in dispute and with its proceeds to pay Heins in full.
No such point was as much as intimated on that hearing.

      II.   As to the challenge of authority of

2. APPEAL AND ER-
ROR: perfecting
appeal: accept-
ance of service:
authority of at-
torney.

Milner to accept notice of appeal for True-
blood, since it is undisputed that Milner was,
at all events, the attorney for Trueblood in
the trial below, the statute on notice of appeal
is sufficient answer.

2.

Heins started out by saying that Trueblood did not authorize or join in the appeal. There is much evidence that he did, but it is unnecessary to exhaust it. While it is true that, for a time, Trueblood demanded that the appeal be dismissed, and made affidavits tending to sustain the claims of Heins, more or less, it appears that, by paper filed in this court on May 2, 1916, Trueblood concluded to change his position and to have the appeal proceed. Nor need we go into the question of what the effect would be upon the appeal of Wehrman if Trueblood withdrew, and what the situation would be on failure to have served notice on Trueblood, the necessity for such notice appearing only after it was too late to serve such notice.

3. APPEAL AND ERROR: when appeal lies: reluctance of appellant to maintain: effect.

3.

As to the challenge of Milner's authority to accept service of the filing of the petition of intervention, it seems to us that there was general authority to serve him with notice of any pleading filed in the case; that it is not very material on this motion whether any notice was served, nor material, as is claimed and disputed, that the petition was not filed until after decree was entered. No objection was made to the late filing. On the contrary, Heins entered appearance through his attorney who stipulated with reference thereto. We do not think it is seriously contended that those attorneys had no authority. For one thing, they represented Heins on the subsequent application for the restraining order, and still represent him in this court, and no such argument was advanced on that application.

4. ATTORNEY AND CLIENT: authority of attorney: intervention: service of pleading.

### 4.

As to failure to serve notice of the filing on Moore: he was before the court; and, at the same time that it recognized the petition of intervention, it recog-

5. APPEAL AND ER-
ROR: perfecting
appeal: notice:
party without
interest.

nized also the stipulation by which Moore's interest had been cut off; and he had no interest at the time, having quitclaimed all the interest he had.

III.   Wehrman, Trueblood and Moore became partners. The partnership, or some of its members, owned or had an interest in certain stocks of the Chandler Motor Car Company

6. COURTS: juris-
diction: writs
to preserve ap-
pellate jurisdic-
tion: inherent
power of court.

and in a Chandler car used for demonstrating purposes.   Heins asserts that, by reason of advances made, he was the pledgee of said property.   Litigation was had below, which resulted in a decree establishing the lien claimed by Heins, and settling the amount due him for which the pledge was security.   One Grossman intervened at some stage of the proceedings, joining the plaintiffs, and claiming that, by purchase from them, he had become the owner of the property in controversy.   Wehrman and Trueblood perfected an appeal from said order and decree.   Intervener made application to the writer to restrain Heins from enforcing his pledge by sale pending the appeal.   He asserted that the property was of highly fluctuating value; that its possession was, therefore, necessary to intervener so that he might avoid loss which might ensue, because, pending appeal, the property which he might sell, if he had control of it, would greatly depreciate in market value; that Heins could not be made to answer for a loss resulting, pending appeal, from decline in the market value of the property.   There was offer to deposit with the clerk of this court a sum sufficient to pay Heins in full if affirmance should ensue, and urged that, since he had no rights except as pledgee, and to not more than the allowance in the decree, such deposit would save

him harmless, no matter how the appeal was decided; that, on the other hand, though the appeal resulted favorably. to appellants, they, instead of being saved harmless in that event, as Heins would be if he prevailed, might still sustain great loss. Respondent Heins appeared by counsel, and objected: (1) that there is no. power to compel him to accept a deposit in the office of the clerk in lieu of his contract right to be paid the money due him, and that so to order would violate constitutional guaranties, both state and Federal, prohibiting the impairment of contract rights; (2) that neither the Supreme Court, much less, any judge thereof, had power to issue the order applied for. An order was granted restraining Heins from proceeding to enforce his claims pending appeal, and commanding Heins to surrender said property to intervener, if a deposit named in the order were made with the clerk. The deposit was made, and the order of surrender complied with. None the less, it is now urged on this motion that the order should not have been made and should be rescinded. It is further urged that the intervention was illegal; that intervener has now dismissed his appeal—wherefore, that phase of the litigation is no longer in court; and that there was in fact no authorized appeal, and, therefore, no jurisdiction to issue orders tending to preserve rights on appeal. These last objections we have disposed of.

IV. The following express grants of power to the Supreme Court exist: It shall have power to issue all writs and process necessary to secure justice to parties, and to exercise a supervisory control over all inferior tribunals throughout the state. Constitution, Section 4, Article 5. It has appellate jurisdiction over all judgments and decisions of all courts of record, except as otherwise provided by law. Code, 1897, Section 4100. It may issue all writs and processes necessary for the exercise and enforcement of its appellate jurisdiction. Code Section 4109. Aside from all this, the power to grant orders which will make the appellate jurisdiction effective and preserve the status, pending appeal, is

inherent. *Manning v. Poling,* 114 Iowa 20, at 26; *Norris v. Tripp,* 111 Iowa 115, at 120; *Murray v. Overstoltz,* 8 Fed. 110; *Ex parte Milwaukee R. Co.,* 5 Wall. (U. S.) 188. They may be issued by a judge of the appellate court (*Murray v. Overstoltz,* 8 Fed. 110; *Bennett v. Bennett,* 3 Fed. Cases, No. 1318; *Finlen v. Heinze* [Mont.], 69 Pac. 829); and it has been the constant practice in this court to have its members issue such writs.

### 2.

There can be no very serious controversy over the power to make this order to the extent of commanding not to do certain things. But one of the distinctions asserted is that here there was mandatory relief, and that, while there may be power to prevent action, there is none to command action. In the cases of *In re McKenzie,* 21 Sup. Ct. Rep. 468, *Forrester v. Boston & M. C. C. & S. Mining Co.* (Mont.), 56 Pac. 868, *McMichael v. Eckman* (Fla.), 7 So. 365, and in *Finlen v. Heinze* (Mont.), 69 Pac. 829, the supersedeas or staying order commanded affirmative action. Aside from that, the scope of the writ may not thus be limited without, for all practical purposes, destroying its efficacy and blocking its vital purpose. The authorities seem to hold that the power implies the right to use any instrumentality necessary to effect the object of the writ and the ultimate purpose of the jurisdiction. *Finlen's* case, supra; *Manning v. Poling,* 114 Iowa 20, at 26, 27; *Norris v. Tripp,* 111 Iowa 115, at 120; *Ex parte Milwaukee R. Co.,* 5 Wall. (U. S.) 188; *Kent v. Mahaffy,* 2 Ohio State 498.

Were we to limit this process on the lines suggested by movant, the question would not be whether, without interference, the status would be destroyed, pending appeal, and how this should be prevented. We would, on the theory of movant, have the right to prevent such result; but that right would be limited to injunctive relief, which would be inadequate to accomplish what we have the right, power and duty to accomplish. It would resolve itself into an inquiry whether

those who sought to destroy the status had been sufficiently ingenious in the method resorted to for the purpose to put themselves beyond a command to refrain from action. The supreme object is to maintain the status, pending appeal. It is quite immaterial what has been done to endanger the status. The vital thing is that it is about to be endangered. That being settled, there is no hard and fast rule wherewith to meet the situation, and the power is broad enough to accomplish meeting it.

3.

It is also urged that the contract rights of Heins have been impaired. This is a confusion of what might have been done before litigation, and what may be done, now that there is a judgment for Heins and an appeal from 7. CONTRACTS: action for breach: judgment: merger of contract rights. it. It will be conceded that, as long as the parties remained out of court, no order could have been made compelling Heins to surrender the property pledged to him, upon the making of a deposit with the clerk of the Supreme Court. But Heins put his rights into court and obtained a decree settling those rights. In this decree his contract rights became merged, and, through that merger, subject to whatever may be done by an appellate court with judgments of the district court. If the order made here may be made to stay the enforcement of any judgment, there is no reason why it may not be made as to a judgment granted by reason of the existence of a contract. In truth, this supervisory power would have little room for application otherwise; because very many, if not most, judgments rest upon the fact that someone entered into contract, and had contract rights antedating the judgment.

4.

Coming to the propriety of the writ, rather than the power to issue it: it is elementary that it should always be granted whenever the rule known as the "balance of conven-

ience" rule is applicable. *New England Company v. Oakwood*, 71 Fed. 52, by Taft, circuit judge. It is always granted where else the final exercise of appellate jurisdiction might prove ineffective, and where the status may be destroyed, pending appeal, unless the writ issued. *Manning v. Poling*, 114 Iowa, at 26; *Norris v. Tripp*, 111 Iowa, at 120; *Winter v. Coulthard*, 94 Iowa 312, at 316; *Murray v. Overstoltz*, 8 Fed. 110; *Hardeman v. Anderson*, 4 How. (U. S.) 640; *Ex parte Milwaukee R. Co.*, 72 U. S. 188; *In re McKenzie*, 21 Sup. Ct. Rep. 468; 2 Cyc. 892, Par. 2; 23 Cyc. 1427, 1428, Sec. A. All that the judge should require is a case of probable right, or probable danger to the right without the interference of the court, and its discretion should be regulated by the balance of inconvenience or injury to one party or the other (High, Injunctions [4th Ed.], Sec. 13; *Ex parte Young*, 28 Sup. Ct. Rep. 441, at 443); and it is said, in *Allison v. Corson* (C. C. A.), 88 Fed. 581, that, in a case where the issuance of a preliminary injunction can cause no substantial loss to anyone in any event, while the failure to issue it might result in a total loss by the plaintiff of all his right and claim in the subject-matter, the temporary injunction should be issued, unless it is reasonably clear that the alleged ground of action is altogether without any just foundation.

The discretion allowed was rightly used here. If Heins surrendered the property to intervener, Grossman, in lieu of the deposit ordered, Heins could not suffer a loss, no matter how the appeal was decided. He was bound to get every dollar awarded him, with interest. On the other hand, appellants might win, and, without this order, find themselves in possession of property worth half what it was when the appeal was instituted, when, if they had had the property, they might have avoided that loss; and would suffer this loss without remedy, because, though it be assumed, as claimed, that Heins is abundantly responsible financially, this would avail nothing, because, no matter how rich Heins is, he could not be made to pay for a loss due to the fall in market price of

the property in dispute, pending appeal. The object, and proper object, of the order was to create a situation so that, no matter how much the disposition of the appeal was delayed, at the end of it both parties would be as well off as though the appeal had been decided on the day it was perfected. The motion is overruled.—*Motion Denied.*

EVANS, C. J., LADD and GAYNOR, JJ., concur.