WHITE *v.* GEORGE, marshal, *et al.*

No. 14425. MARCH 10, 1943.

*Houston White,* pro se.  *Ralph H. Pharr,* for defendant.

DUCKWORTH, Justice.  ■  This court is not here concerned with whether or not the facts stated in the contempt order were sufficient to authorize the court to adjudge the prisoner to be in contempt of court.  "A discharge under a writ of habeas corpus, after a conviction, can not be granted unless the judgment is absolutely void; as where the convicting court was without jurisdiction, or where the defendant in his trial was denied due process of law, in violation of the [Federal fourteenth amendment (Code, § 1-815) and the State] constitution [art. 1, sec. 1, par. 5 (Code, § 2-105)].  Since the writ can not be used merely as a substitute for a writ of error or other remedial procedure to correct errors of law, of which the defendant had opportunity to avail himself, no question as to guilt or innocence or as to any irregularity can be so raised, unless it was such as to render the judgment wholly void." *Aldredge* v. *Williams,* 188 *Ga.* 607 (supra).

■  It is admitted that the civil court of Fulton County has authority to punish for contempt, and that the punishment inflicted in the instant case does not exceed that authorized by law.  Therefore the sole question here presented is whether one who has committed a direct contempt in the presence of the court is entitled to a hearing before the imposition of 'the punishment for the contempt, it being contended by the plaintiff in error that the failure to allow him a hearing deprived him of due process of law and rendered the judgment of contempt void.  Where a direct contempt is committed in the presence of the court, no service of any commitment is necessary; but the rule is otherwise in cases of constructive contempts.  *Hall* v. *Martin,* 177 *Ga.* 238 (170 S. E. 41).  All the authorities agree that a hearing must be accorded to one charged with a constructive contempt.  *Wheeler* v. *Harrison,* 57 *Ga.* 24; *Wheeler* v. *Thomas,* 57 *Ga.* 161; *Mize* v. *Baisden,* 69 *Ga.* 751; *Wester* v. *Martin,* 115 *Ga.* 776 (42 S. E. 81); *Carson* v. *Ennis,* 146 *Ga.* 726 (3) (92 S. E. 221, L. R. A. 1917E, 650); *Lewis* v. *Theodoro,* 33 *Ga. App.* 355 (2) (126 S. E. 158); 12 Am. Jur.

437. The right of a court to summarily adjudge one to be in contempt for acts committed in the presence of the court, without allowing a hearing on the merits of the alleged contempt, has not heretofore been dealt with by this court. The courts of other jurisdictions are in conflict as to the necessity of the grant of a hearing. In some States the right to a hearing in such cases is based upon special statutes or constitutional provisions. Ex parte Dawes, 31 Okla. Crim. 397 (239 Pac. 689); Russell *v.* French, 67 Iowa, 102 (24 N. W. 741). In others it has been held that a hearing should be granted, in order that the accused may have an opportunity to explain or excuse his contempt, or show that no contempt was intended. People *v.* Zazove, 311 Ill. 198 (142 N. E. 543); State ex rel. Rankin *v.* District Court, 58 Mont. 276 (191 Pac. 772). However, we think the better rule to be that a hearing in such cases is not demanded as a matter of right. In Ex parte Terry, 128 U. S. 289, 307 (9 Sup. Ct. 77, 32 L. ed. 405), it was said: "It is undoubtedly a general rule in all actions, whether prosecuted by private parties, or by the government, that is, in civil and criminal cases, that 'a sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal.' Windsor *v.* McVeigh, 93 U. S. 274, 277 [23 L. ed. 914]. But there is another rule, of almost immemorial antiquity, and universally acknowledged, which is equally vital to personal liberty and to the preservation of organized society, because upon its recognition and enforcement depend the existence and authority of the tribunals established to protect the rights of the citizen, whether of life, liberty, or property, and whether assailed by the illegal acts of the government or by the lawlessness or violence of individuals. It has relation to the class of contempts which, being committed in the face of the court, imply a purpose to destroy or impair its authority, to obstruct the transaction of its business, or to insult or intimidate those charged with the duty of administering the law." In that opinion it was further stated: "It is a settled doctrine in the jurisprudence both of England and of this country, never supposed to be in conflict with the liberty of the citizen, that for direct contempts committed in the face of the court, at least one of superior jurisdiction, the offender may, in its discretion, be instantly ap-

prehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred; and that, according to an unbroken chain of authorities, reaching back to the earliest times, such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions. Without it, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them." If the court were required to grant the contemnor a hearing before inflicting punishment for a direct contempt committed in the face of the court, it would interrupt the orderly functions of the court. If the contempt consists of a flagrant showing of disrespect for the person of the judicial officer of the court, what good purpose could a showing serve? The contemnor would not lessen his offense by stating the facts on which he based his lack of respect for the judge. If in fact the judge lacks the high qualities which every judicial officer should possess, persons coming into a court presided over by that officer must yet show the proper respect for the office which he holds. The grant of a hearing for the purpose of allowing the contemnor to show that his contemptuous acts were justified by reason of the personal qualities of the judge could only add to the confusion and disorder, without lessening the offense of the contemnor. The orderly processes of the courts require that they have the power to summarily punish for such contempts, without being required to interrupt their other proceedings to grant a hearing which would only add to the disorder. It may be true that this power may be abused. However, as was said in Ex parte Kearney, 7 Wheat. 38 (5 L. ed. 391): "Wherever power is lodged it may be abused. But this forms no solid objection against its exercise. Confidence must be reposed somewhere; and if there should be an abuse, it would be a public grievance, for which a remedy may be applied by the legislature, and is not to be devised by courts of justice.". Even though a hearing may not be demanded as a matter of right, we think it would be a wise exercise of discretion for the court to allow the contemnor an opportunity to mitigate his offense by showing that no contempt was intended, or any other mitigating circumstances, except in cases where there could be no excuse for

the action of the contemnor.  It follows that the trial court did not err in remanding the prisoner to the custody of the sheriff. For an annotation of the cases on the subject of this opinion, see 57 A. L. R. 545.  *Judgment affirmed.  All the Justices concur.*

GRICE, Justice, concurring specially.  I do not understand that this judgment means, or that anything in the opinion holds, that a party is remediless who is adjudged in contempt for conduct in the immediate presence of the court, when in fact such conduct was not contemptuous.