37585. GARLAND *v.* TANKSLEY, Judge.

202

DECIDED MARCH 2, 1959.

*J. Walter LeCraw, William G. McRae, Benjamin B. Garland, Joe R. Edwards, J. Richmond Garland, G. Seals Aiken, Vester M. Ownby, Reuben A. Garland,* for petitioner.

*William G. Grant, Paul Webb, Solicitor-General, Eugene L. Tiller, Carl B. Copeland, Lewis R. Slaton,* contra.

*Hamilton Lokey, W. Neal Baird, John L. Westmoreland, Theodore M. Forbes, Jr., Hoke Smith, Woodrow Tucker, Turner Parchal, David H. Gambrell, Devereaux F. McClatchey, J. Sidney Lanier, J. M. B. Bloodworth, Edgar A. Neely, Zack D. Cravey, Jr., Griffin Patrick, Jr., R. Emerson Gardner, E. W. Moise, Jack Broyles, Paul T. O'Connor, J. Corbett Peek, Jr., R. J. Reynolds, Jr., Harry J. Mehre, Jr., George B. Haley, Jr., J. C. Murphy, A. Ed Lane, Jr., James A. Stanfield, A. C. Latimer, Bruce F. Woodruff, George M. Hopkins, John M. Williams, Robert E. Hicks, Noah J. Stone, Walter M. Rodgers, Edwin L. Sterne, Elmo Holt, Glenn Frick, Charles M. Lokey, Henry L. Bowden, Wilbur Smith, M. D. McLenden, J. J. Goodwin, Russell G. Turner, Sr., J. A. Branch, Frank D. Foster, Welborn B. Cody, Frank Conner, W. S. Northcutt, Cleburne E. Gregory, Jr., H. Fred Gober, Alex McLennan, McChesney H. Jeffries, Allen C. Lockerman, Paul H. Anderson, H. C. Holbrook, Henry Troutman, Alex P. Gaines, Harry L. Greene, M. K. Pentecost, G. Ernest Tidwell, Ferdinand Buckley, John D. Jones, James H. Moore, Sanders McD. Marshall, Burt DeRieux, Ernest Brookins, Thomas C. Shelton, Ernest P. Rogers, Stonewall H. Dyer, Marjorie King, Walter V. Brady, Lynwood A. Maddox, Robert L. Rivers, Joseph B. Kilbride, Mose S. Hayes, Barry Phillips, Henry M. Hatcher, Jr., Bates Block, Thomas Hal Clarke, Clarence H. Calhoun, Jr., Antha Mulkey, Lamar Sizemore, Philip H. Alston, Jr., John L. Moore, Jr., James Thomas, Francis Shackelford, Wm. B. Spann, Jr., Henry J. Miller, Hewitt H. Covington, James L. Alston, James K. Rankin, Edward E. Dorsey, Stanley P. Meyerson, Foy L. Hood, Herbert Johnson, Wm. F. Buchanan, James C. Grizzard,*

*Walter W. Calhoun, Walter A. Smith, Newell Edenfield, Nolan Harmon, W. H. Major, James C. Howard, John K. Calhoun, Robert W. Speer, W. Glen Harlan, Henry M. Quillian, Terry P. McKenna, James C. Hill, John W. Chambers, Ferrin Y. Mathews, Robert S. Wiggins, Granger Hansell, John H. Boman, William L. Moore, John L. Westmoreland, Jr.,* briefs amici curiae for Judge Tanksley.

PER CURIAM. On the 23rd day of January, 1959, Judge Jeptha C. Tanksley, one of the Judges of the Superior Court of the Atlanta Judicial Circuit, cited Reuben A. Garland for contempt of court, the order of the contempt being as follows: "Paragraph 1. The above styled case having been tried in this court from January 12, 1959, through January 23, 1959, and Reuben A. Garland having appeared in this court throughout the trial as attorney for the defendant, George Michael Bright, and said Reuben A. Garland during said trial having wilfully made numerous inflammatory and prejudicial statements in the presence of the jury, and the said Reuben A. Garland having made numerous contemptuous and prejudicial remarks to the court, and the said Garland having wilfully suggested answers and information to witnesses while testifying after specific instructions from the court not to do so, all as appears in the testimony of the witnesses, Mrs. Janice Rothschild, Charles B. Smith, L. E. Rogers, Jimmie Dave DeVore, Mrs. Marilyn Craig and Lewis Glover in the record of said case, and it further appearing that the said conduct of Reuben A. Garland was intended by said Garland to be contemptuous of the court, and it further appearing that said conduct did interfere with the lawful administration of justice, and said conduct having occurred in open court and in the presence of the court.

"The said Reuben A. Garland, because of the conduct referred to in this Paragraph 1 of this order is now considered and adjudged to be in contempt of the court, and it is hereby ordered that he be confined in the jail of Fulton County for a period of twenty (20) days as punishment for said contemptuous conduct.

"Paragraph 2. It further appearing that the said Reuben A. Garland did during the testimony of the witness, R. E. Little, make numerous contemptuous remarks and arguments to the

court, and it further appearing that the said Reuben A. Garland did, while this witness was testifying, refuse again and again to yield to, and to obey the instructions of the court, and it further appearing that said conduct was contemptuous of the court, and all of said conduct referred to in this Paragraph 2 of this order having occurred in open court and in the presence of the court, and having occurred during the testimony of R. E. Little, and being distinct and separate acts from that referred to in Paragraph 1 of this order, and said conduct having been contemptuous of the court, and having interfered with the lawful administration of justice, the said Reuben A. Garland, because of the conduct referred to in this Paragraph 2 of this order, is hereby considered and adjudged to be in contempt of court, and it is hereby ordered that he shall be confined in the jail of Fulton County for a period of twenty (20) days as punishment for this said contempt, said twenty (20) day period of confinement referred to in this Paragraph 2 of this order to follow immediately upon the termination and completion of the period of confinement ordered in Paragraph 1 of this order.

"Paragraph 3. The sheriff of this county, or his lawful deputy, is hereby ordered to remove the said Reuben A. Garland from the bar of this court to the Fulton County jail, and there to confine him for a period of twenty (20) days as provided in Paragraph 1 of this order.

"The sheriff of this county, or his lawful deputy, is further ordered, upon the termination of the confinement referred to in Paragraph 1 of this order, to immediately confine the said Reuben A. Garland in the Fulton County jail for a second period of twenty (20) days as provided in Paragraph 2 of this order."

Subsequently, Reuben A. Garland petitioned the said judge for supersedeas of said judgment of contempt alleging the following: "1. Applicant has been held in confinement under above order without bail since Friday evening, Jan. 23, 1959, and is now confined by the Sheriff of Fulton County in the county jail under said order.

"2. Applicant desires to appeal by writ of error from said judgment of contempt of court against him, and fellow members of the Atlanta bar are now engaged in preparing for presentation

a bill of exceptions assigning error upon said judgment as soon as the necessary facts and exhibits can be gathered and typed.

"3. The court reporters who took down the testimony in the above stated trial have been given a legal request to transcribe and write out the testimony of the seven witnesses who were named in the court's order adjudging applicant in contempt, and to write out the questions and colloquies and responses which took place in connection with the testimony of said 7 witnesses, and said court reporters stated that it is impossible for said record to be written out for very many days—possibly extending into weeks.

"4. The record of said testimony of said 7 witnesses and the colloquies and responses in connection with said testimony would be necessary to a proper consideration of the legal questions involved in an appeal from said judgment, particularly since said judgment referred to said witnesses by name and adjudged applicant guilty of contemptuous conduct toward the court during the testimony of the said 7 witnesses.

"5. Applicant was in a state of collapse at the conclusion of the above stated trial and at the time of his said adjudication of contempt, having just gone through 2 weeks of court trial of said case, during which night sessions were held on many nights, and applicant being so fatigued and worn out at many times during said trial that he was not in proper physical condition to go on with said trial but continued anyhow, to the detriment of his health.

"6. He is now ill and suffering greatly from his confinement in said jail, and because of his physical condition his continued confinement during the lengthy period involved in preparation of his appeal would result in cruel and unusual punishment not contemplated by the laws of this State to be inflicted during the period of an appeal.

"7. His physical condition is shown by a medical certificate attached hereto as Exhibit A.

"8. Unless a supersedeas is granted, the questions to be raised by a writ of error in this case will become moot.

"Wherefore, applicant prays that the court issue an order of supersedeas of the said judgment of Jan. 23, 1959, pending com-

pletion and presentation of the bill of exceptions above referred to within the time allowed by law, either without bond or with bond and security if the court deems that necessary or proper, or upon such other conditions as the court deems proper."

Upon the refusal of the said judge to supersede said judgment, Reuben A. Garland filed in this court a petition for supersedeas of said trial court judgment alleging as follows: "Reuben A. Garland, being now held in Fulton County jail under a contempt of court adjudication against him with a sentence of 40 days in jail, brings this application to the Court of Appeals of Georgia under its Rule 51 (82 *Ga. App.* 903), and shows:

"1. He has applied to Judge Jeptha C. Tanksley for a supersedeas of the judgment of contempt of court and sentence of 40 days imprisonment in jail imposed upon him Jan. 23, 1959, a copy of said application being attached hereto as Exhibit A.

"2. Judge Tanksley refused to grant said supersedeas.

"3. Petitioner desires to appeal by writ of error from said judgment of contempt of court, and for the reasons set forth in the application to Judge Tanksley it will require a considerable time to have the necessary evidence transcribed and the bill of exceptions prepared.

"4. If petitioner's enforced confinement in jail pending his appeal is continued, the questions raised by the writ of error would become moot.

"5. Petitioner is ill and suffering greatly in said jail, as shown by the medical certificate attached to the application to Judge Tanksley, and it is not in conformity with the spirit of the laws of this State for an appellant to be so confined in jail without bond pending an appeal from a judgment which he contends is unjust.

"6. A copy of this petition has been served upon the respondent, Judge Jeptha C. Tanksley, of Fulton Superior Court.

"Wherefore, petitioner prays that this court grant its order of supersedeas in said case under Rule 51."

This court issued a rule nisi directed to the trial judge to show cause why the prayers of the petition to this court should not be granted. Upon the hearing of the rule, none of the facts alleged in the petition were traversed, but counsel for respondent

moved to dismiss the petition on the ground that the relief prayed for was not within the jurisdiction of this court to grant.

1. While the petition to this court is brought under Rule 51 of this court (Code, Ann., § 24-3651), it fails to come within the purview of that rule for the reason that this rule relates only to cases where writs of error are pending in this court, and no such writ was here at the time this petition was heard in this case. However, this rule in the first instance was formulated under the inherent powers of this court to promote justice and the equitable administration of the duties which this court was created to perform. As to jurisdiction, it appears without contradiction from the pleadings and statements of counsel for both parties in argument before the court that the necessary length of time required to prepare a brief of evidence, which counsel consider necessary to the perfection of the bill of exceptions in this case, due to the manner in which the court's order was drawn, cannot be obtained so as to bring the writ of error before this court for review until a time subsequent to that in which the petitioner will have completed the service of his sentence. Where a jail sentence is imposed for a contempt of court, and such sentence has been served in its entirety at the time the writ of error is presented for argument to the appellate court, it will be dismissed as moot. *Stark* v. *Hamilton*, 149 *Ga.* 44 (99 S. E. 40). Accordingly, under the same inherent power of the court which is the basis of Rule 51, where it appears that there is an order or judgment of a trial court which is sought to be reviewed, and which under the laws of this State is reviewable, but because of the unusual circumstances a means of acquiring and holding jurisdiction is not spelled out to this court under existing statutory authority, this court of necessity may and should pass such order as may be necessary to prevent an otherwise reviewable decision of a trial court from becoming moot by passage of time without any fault upon the part of the complaining party. Otherwise, there would be no control by the reviewing courts of this State over any judgment or order, the execution of which might be completed before a writ of error to a reviewing court could be sued out.

Art. I, sec. I, par. II of the Constitution of the State of Geor-

gia (Code, Ann., § 2-102) provides: "Protection to person and property is the paramount duty of government, and shall be impartial and complete."

Art. I, sec. I, par. III of the Constitution of the State of Georgia (Code, Ann., § 2-103) provides: "No person shall be deprived of life, liberty, or property, except by due process of law."

Art. I, sec. I, par. IV of the Constitution of the State of Georgia (Code, Ann., § 2-104) provides: "No person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this State, in person, by attorney, or both."

Code § 24-3901, Section 3, provides under the enforcing powers of the Supreme Court, which are the same as this court's, as follows: "To grant any writ necessary to carry out any purpose of its organization, or to compel any inferior tribunal or officers thereof to obey its order."

Under this rule we think that it was superfluous for the General Assembly to give the appellate courts of this State authority to require a judge of a trial court to sign a bill of exceptions by means of mandamus. (Code § 6-910). We think this court had this power under the authority next above cited.

While this is a question of first impression in this State, other state appellate courts confronted with the same problem have had little difficulty in construing their general power to grant writs necessary to carry out their powers, or, the inherent power of the court as an appellate tribunal irrespective of the power to grant writs, as authority to allow such appellate tribunal to grant supersedeas in cases where irreparable injury would otherwise result.

In the recent case of Kennett v. Levine, 49 Wash. 2d 605 (304 P. 2d 682) the court said: "This is an ancillary proceeding in which the appellant seeks a permanent writ of supersedeas pending the appeal. The sole issue presented is whether this court, in the exercise of its discretion, should require that the litigants' status quo be maintained until the appeal can be heard upon its merits before this court." Pointing out that under the Washington Constitution the Supreme Court has power to issue "all other writs necessary and proper to complete exercise of its appellate and revisory jurisdiction", the court held: "In aid of its appellate

jurisdiction, this court has inherent power to grant all writs it deems necessary and proper to preserve the fruits of appeal for an appellant in the event such appeal should be successful." It then cites the case of State *v.* Board of Education, 19 Wash. 8 (52 P. 317, 40 L. R. A. 317). In that case the appellant, after giving notice of appeal in the trial court, filed a bond which that court held not to be a supersedeas, and appellant then applied to the Supreme Court for an order of supersedeas, on the ground that the action, being one of prohibition against him in his official capacity, would work irreparable injury should a trial in the lower court on the merits have the effect of ousting him from office while the appeal on the motion to dismiss was pending. The court said: "We think that this court, in the exercise of its discretion, by virtue of its inherent powers as an appellate tribunal, can issue an order of supersedeas to preserve the status quo of the parties pending a determination of the appeal upon its merits. . . It is conceded that an appeal lies from the judgment of the court in quashing the writ, and under the provision just read, for the purpose of making that appeal effective, and to insure the complete exercise of this court over that appeal, it becomes necessary and proper to supersede the judgment, otherwise the right to appeal which the statute has given would be of no avail to the appellant, for if the board of directors in the meantime were to proceed to remove him, when the case finally reached this court on appeal it would have to be dismissed for want of merit, because the trial on merit would already have terminated. . . We think this is exactly the kind of a case which is contemplated by the Constitution, and that the only way that this court could maintain the complete exercise of its appellate jurisdiction would be by issuing the writ prayed for. There would be no meaning to the provision of the Constitution, and no necessity for it, if it could only be held to apply to cases where supersedeas was provided for by the law."

Under a similar Kentucky constitutional provision, it was held in Weintraub *v.* Murphy, (Ky.) 240 S.W. 2d 594, that the court would entertain a direct ancillary petition and issue such writs as might be necessary to supervise proceedings in a trial

court which might otherwise result in an unappealable judgment.

In Wehrman v. Moore, 177 Iowa 542, 548 (159 N. W. 218), it was stated: "The following express grants of power to the Supreme Court exist: It shall have power to issue all writs and process necessary to secure justice to parties, and to exercise a supervisory control over all inferior tribunals throughout the state. Const. § 4, art. 5. It has appellate jurisdiction over all judgments and decisions of all courts of record except as otherwise provided by law. Code 1897, § 4100. It may issue all writs and processes necessary for the exercise and enforcement of its appellate jurisdiction. Code, § 4109. Aside from this, the power to grant orders which will make the appellate jurisdiction effective and preserve the status pending appeal is inherent. Manning v. Poling, 114 Iowa, 26, 83 N. W. 895, 86 N. W. 30; Norris v. Tripp, 111 Iowa, 120, 82 N.W. 610; Murray v. Overstoltz (C. C.) 8 Fed. 110; Ex parte Milwaukee, etc., Railway Co., 5 Wall. 188, 18 L. E. 676. They may be issued by a judge of the appellate court (Murray v. Overstoltz [C. C.] 8 Fed. 110; Bennett v. Bennett, 3 Fed. Cas. No. 1318; Finlen v. Heinze, 27 Mont. 107, 69 P. 829); and it has been the constant practice in this court to have its members issue such writs." This is the unquestioned practice of the United States Supreme Court.

Although over 100 lawyers have participated in briefs on this question before this court, none has cited the cases of Holcombe v. Roberts, 19 Ga. 588, and Lindsey v. Lindsey, 14 Ga. 657. From them stems the doctrine that the trial court should, where irreparable injury may result by carrying the judgment instantly into effect, allow reasonable time by supersedeas for making out the bill of exceptions. Yet in each of those cases the Supreme Court held in effect that it had no authority to reverse the action of the trial court, and that the inadequacy of the law was one which needed legislative attention. However, these cases were decisions on writs of error assigning error on the refusal of the trial court to issue a supersedeas; it appeared in both of them that the injury, if any, had already been done. In one case the defendant had been released from imprisonment; in the other, the child who was the subject of the habeas corpus proceeding had been removed from the State. In no other case which we

have found has this question been raised, as it is raised here, by a direct ancillary petition to the appellate court, rather than a mere assignment of error in a bill of exceptions *after* the action taken has become irreparable.

It has been argued that, regardless of inherent power, the jurisdiction of the appellate court cannot be made to attach to the subject matter of any legal proceedings other than by a valid writ of error, with the single exception of mandamus to the trial judge to certify a bill of exceptions under Code § 6-910. Yet this is not absolutely true, for as early as *Stanford* v. *Treadwell*, 68 *Ga.* 827, the Supreme Court commenced the practice of directing the trial court to treat a premature bill of exceptions, dismissed by it, as exceptions pendente lite in order to preserve the right of appeal. See Code (Ann.) § 6-905, Catchword "Direction." A writ of error which is dismissed, whether because it is premature or for any other reason, is absolutely void; it follows that the appellate court's discretionary power to preserve a right of review which would be lost except for action on its part is not absolutely dependent upon the existence of a bill of exceptions. In these instances not only is there no bill of exceptions in the appellate court, but there is no assurance one will ever be there, for if the case terminates favorably to the complaining party, he will not desire a review.

Both Code § 6-910 and § 24-3901 (3) (the latter in a slightly changed form) come from the Judiciary Act of 1845 (Cobb, p. 446 et seq.). It is interesting to note that Section XIV of the original act gives power to the Supreme Court "to award all such process as may be necessary to enforce obedience to their orders and judgments, and as are usual in other appellate tribunals." Examination shows that both the Federal Government by statute and many of the States then existing, by constitutional provision, gave to appellate tribunals the right to supervise inferior judicatories, including the right to grant supersedeas in cases like that now before us. It is our opinion, therefore, that neither the framers of the Judiciary Act nor the State legislatures adopting the Code of 1861 and subsequent Codes, had the intention of restricting the rights of the appellate tribunal in cases relative to its power to retain jurisdiction over a cause

pending or about to be pending before it, but rather that it was the intention of the lawmakers to make as wide a grant of such powers to the Supreme Court as was possessed at the time by like appellate tribunals. If this be so, the right to grant a supersedeas in this case cannot be questioned.

The distinction between the use by appellate courts of writs in furtherance of original jurisdiction, and the use of writs for the limited purpose of protecting appellate jurisdiction, has been spelled out in Federal procedure since early times. The Judiciary Act of 1789 (28 U.S.C.A. § 1651) provided that the United States Supreme and Circuit Courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions." Marbury v. Madison, 1 Cranch (5-6 US) 49, early pointed out that no statute can increase the jurisdiction of the Supreme Court as fixed by the Constitution, and held that the mandamus sought in that case was an act of original rather than appellate jurisdiction, and the statute accordingly unconstitutional. Yet the Act of 1789 was, in Hardeman v. Anderson, 4 How. (45 U.S.) 640, considered ample authority under the Constitution to allow the Supreme Court on application to issue a supersedeas pending appeal, "leaving the question, whether a writ of error will lie to the judgment in this case, an open one." Further, courts of record at common law might protect their jurisdiction by writs of supersedeas in matter properly cognizable there. See Taylor v. Carryl, 20 How. (61 U.S.) 583.

2. While the grant of a supersedeas for contempts committed in the presence of the court is a matter within the sound discretion of the trial court before whom the contempt is committed (Code, Ann., § 6-1009) and while a person so held for such a contempt before a trial judge is not as a matter of right entitled to a hearing (*White* v. *George*, 195 *Ga.* 465, 24 S. E. 2d 787), such a judgment of the trial court is nevertheless reviewable by this court. *City of Macon* v. *Massey*, 214 *Ga.* 589, 590 (106 S. E. 2d 23).

3. It appearing that this petitioner was sentenced for two separate contempts to serve the maximum of 40 days, and it further appearing that this petitioner will not be able to gain a review of the judgment of the trial court under which he is

imprisoned unless a supersedeas is granted, this court holds that the trial court abused its discretion in denying the supersedeas under these circumstances.

Amici curiae briefs have been filed in this case containing the names of many eminent attorneys. This court is grateful for the interest and good intentions of these men. We must emphasize that the question involved here is not the guilt or innocence of the attorney, as some of the statements in the briefs and some news reports indicate. For instance, the following statement is made in one of the briefs: "As an officer of the court every lawyer should assist in upholding the dignity of the court and obeying the law. When he fails in this duty the court should have the power to punish him. A lawyer should be the last person to claim to be above the law." And the brief refers to various other adjudications against the lawyer here involved, none of which are matters of record in this proceeding. For this court to pass on the merits of this case from hearsay and newspaper accounts would make this court contemptuous in the eyes of the world. We are not deciding whether Mr. Garland is guilty or not. What we are deciding is that not only are lawyers not above the law, but that judges are not. We are simply saying that no citizen of this State, whether he be lawyer or layman, can be deprived of a judicial review of his case to which he is entitled, by circumstances beyond his control which prevent him from bringing his appeal to an appellate court before his sentence is served and his case is moot. ·

Since the original decision of this court in this case and the granting of a motion for a rehearing, a writ of error has been filed in this court by Reuben A. Garland. The original order of this court granting a supersedeas under certain conditions until the final termination of this case is hereby modified as follows: In the event the petitioner desires to and does present a new application for supersedeas to the trial court within three days from the rendition of this decision and the same is granted by the trial court, this supersedeas ends; in the event it is denied by the trial court the petitioner will have three additional days after such denial in which to apply to this court for such a supersedeas if he desires to do so, and action on such application by

214

this court will terminate the present supersedeas. The judgment of this court otherwise, as originally rendered, is adhered to and the foregoing opinion as amended is substituted for the original.

*Felton, C. J., Townsend, Quillian and Nichols, JJ., concur. Gardner, P. J., and Carlisle, J., dissent.*

Carlisle, Judge, dissenting. I dissent from the decision, judgment and action of the majority of the court in this case. In so acting and in so ruling, this court is exceeding its jurisdiction. The jurisdiction of the Court of Appeals is for the trial and correction of errors of law from the superior courts (and such other courts as are enumerated) in all *cases* in which such jurisdiction has not been conferred by the Constitution on the Supreme Court. Constitution, art. 6, sec. 2, par. 8 (Code, Ann., § 2-3708). With one exception (the issuing of a mandamus to compel the certification by the trial judge of a bill of exceptions —Code § 6-910), the jurisdiction of this court is appellate jurisdiction conferred by the orderly procedure of the bringing of a writ of error to this court. In the instant case, there is admittedly no writ of error, for a bill of exceptions has not even been prepared and the writ of error is not issued until the trial judge certifies the bill of exceptions. Code § 6-807. This court has no original jurisdiction. *French* v. *Long,* 97 *Ga. App.* 656 (104 S. E. 2d 155).

The petition in this case was purportedly brought under the provisions of Rule 51. The power of this court to order a supersedeas under that rule clearly extends only to those cases in which a writ of error is pending and not to any case where a writ of error might some day be issued.

Furthermore, the petitioner in this case has no *right* under the provisions of the Act of 1939 to a supersedeas. The right granted in that case was expressly limited to civil contempts and not to criminal contempts. Code (Ann.) § 6-1009. I think that it is manifest that whether or not a supersedeas will be granted or refused in cases of criminal contempts lies solely within the discretion of the trial judge before whom the contempt is committed, and that this court, having no jurisdiction in this case, is establishing a dangerous precedent inimical to the orderly administration of justice in interfering with the discretion of the

trial judge to control the conduct of counsel and parties in his court. See *White* v. *George,* 195 *Ga.* 465 (24 S. E. 2d 787), and *White* v. *State,* 71 *Ga. App.* 512 (31 S. E. 2d 78). Even if this court had jurisdiction, such discretion ought not to be controlled by this court or any other appellate court, except in cases where a clear showing of an abuse of such discretion is made, and I do not think that this court can say that such a showing has been made here.

I am authorized to say that Gardner, P. J., concurs with me in this dissent.

ON MOTION FOR REHEARING.

GARDNER, Presiding Judge and CARLISLE, Judge, dissenting. When this case was before this court originally, we held that the Court of Appeals had no jurisdiction to issue the order which was concurred in by four of the judges of the Court of Appeals.

As we come now to consider the question of passing upon the motion for rehearing filed on behalf of the trial judge, we wish to reiterate that we are still of the opinion that the Court of Appeals has no jurisdiction in this case whatsoever.