40379.  GARLAND v. GRAY, Judge.

DECIDED SEPTEMBER 11, 1963.

*Wesley R. Asinof, Benjamin B. Garland, Reuben A. Garland, Jr.,* for petitioner.

*J. Bowie Gray, William T. Boyd, Solicitor General,* contra.

RUSSELL, Judge. The sole question which concerns this court at this time is its jurisdiction either to grant or direct the trial court to grant supersedeas of the judgment disbarring the petitioner from the practice of law pending the receipt of the writ of error, it being conceded that until such time the case is not in fact pending in this court. The appellate courts generally have no authority to direct trial courts as to actions pending before the latter, *Marlowe v. Worrill,* 183 Ga. 275 (188 SE 340), *McPhail v. Bagley,* 96 Ga. App. 179 (99 SE2d 500) and have no original jurisdiction, Art. VI, Sec. II, Par. VIII, Constitution of Georgia (*Code Ann.* § 2-3708) except the statutory jurisdiction to compel by mandamus the certification of a bill of exceptions to this court, *Code* § 6-910; the inherent powers to punish for contempt, *In re Fite,* 11 Ga. App. 665 (76 SE 397), and to grant writs, including the writ of supersedeas, for such limited purposes as to preserve the court's jurisdiction over the case. *Garland v. Tanksley,* 99 Ga. App. 201 (107 SE2d 866); Rule 48 of the Rules of the Court of Appeals printed in 100 Ga. App. 865, 876. This jurisdiction is not enlarged by *Yeates v. Roberson,* 4 Ga. App. 573 (4) (62 SE 104) which only recognizes the right of this court to grant supersedeas of a judgment of another tribunal at a time when the case is actually pending in the appellate court on writ of error, not prior to the suing out of the writ. Nor is the petitioner aided by *Code* § 24-3901 (3) empowering an appellate court "To grant any writ necessary to carry out any purpose of its organization" since the appellate court "cannot aid him to take any step in the superior court in a case pending in that court and in which no writ of error has

been sued out or applied for," *Central R. Co. v. Miller,* 91 Ga. 83, (16 SE 256) except, as observed above, for the purpose of preventing the case from becoming moot and thus divesting it of its jurisdiction. And see also *Savannah, Fla. & W. R. Co. v. Postal Telegraph-Cable Co.,* 113 Ga. 916 (1) (39 SE 399). Thus our judgment in *Garland v. Tanksley,* 99 Ga. App. 201, supra, enunciated a sort of judicial self-help doctrine—our grant of supersedeas there was for the narrow purpose of enabling this court to preserve its own jurisdiction.

The respondent does not question the applicant's statement that the case will be appealed and certain issues raised, including the right of the trial judge to direct a verdict in a disbarment case. It is also agreed that the injury done the applicant as well as third parties by reason of failure to grant supersedeas at this time may, in the event of reversal, result in a possibility of irreparable injury. It is of course true that when the bill of exceptions is filed and certified by the trial judge and other statutory provisions are complied with, that court must grant supersedeas on proper application either in a civil case, *Code* § 6-1002, or in a criminal case, *Code* § 6-1005. As to the latter this is so whether the offense is bailable or not, for bail and supersedeas are subject to different rules. *Vanderford v. Brand,* 126 Ga. 67, 71 (54 SE 822, 9 AC 617). As to grant of supersedeas prior to the filing of the bill of exceptions, it is interesting to note that the Supreme Court has from its early days strongly indicated a need for legislation so as to conform the grant of supersedeas prior to the pendency of the writ of error to that which obtains afterward. See *Lindsey v. Lindsey,* 14 Ga. 657, *Holcombe v. Roberts,* 19 Ga. 588, 590; *Harris v. Gano,* 117 Ga. 934, 936 (44 SE 11); *Gustoso Cigar Mfg. Co. v. Ray,* 117 Ga. 565 (43 SE 984). Such a provision as applied specifically to disbarment cases presently appears in the Proposed Rules and Regulations for the Organization and Government of the State Bar of Georgia and the rule also obtains either by regulation or statute in Federal practice and in the courts of most of the other States. It does not, however, at this time obtain here, from which it follows that this court has no means at hand to acquire jurisdiction of the issue involved.

*Application for supersedeas denied. Felton, C. J., and Pannell, J., concur. Eberhardt, J., disqualified.*

EBERHARDT, Judge, disqualifying. I was subpoenaed by the respondent in the trial court and testified as a character witness. For that reason it is my view that I should disqualify and refrain from further participation in any phase of the matter.

Although there is no specific provision in the Canons of Judicial Ethics relative to this situation, I feel that their spirit and purport requires that the judge maintain an impartial position and that he desist from sitting in judgment in any matter unless he not only be free of partisanship but, as well, of the appearance thereof and hence demands that I disqualify.

While we have no statute on the subject in Georgia, a Federal judge is required to disqualify himself "in any case in which he . . . is or has been a material witness . . ." 28 USCA 455.[1] I do not think a lesser standard should be applied in our system of State courts than in the Federal system.

In 1950 an American Bar Association Special Committee on the Propriety of Judges Appearing as Witnesses, after many months of careful consideration, much study and work in the preparation of it, filed a report which was published in 36 ABA Journal 630 (August, 1950). Concluding that judges should not generally be called as witnesses, particularly if the matter can be proven by other means or witnesses, but recognizing that there are instances when it may be vital to the rights of a party to call a judge who may have knowledge of a matter in issue, the

---

[1]After Justices Reed and Frankfurter testified as character witnesses in the Alger Hiss case two bills were introduced in the 81st Congress to amend this section. One of them, H.R. 5623, would add a provision that Federal judges should not be compelled to appear as character witnesses where the testimony could be obtained from other sources, and the other, H.R. 5671, would place an absolute prohibition on character testimony by Federal justices in any action in the Federal courts. Neither of the bills was enacted, but when the case reached the Supreme Court both of these justices, as well as Justice Clark who had been Attorney General during the investigation of the charges, disqualified. See Hiss v. U. S., 340 U.S. 948 (71 SC 530, 95 LE 683).

Committee was of the unanimous opinion that if a judge is called or subpoenaed as a witness and testifies,[2] he should not thereafter participate to any extent in the matter. And it was pointed out that as to this there should be "no distinction in evidence as to character or reputation and evidence as to any other fact in issue."

I share the view of the Committee in stating its reasons when it asserted: "As to the use of judges as character witnesses, additional considerations apply owing to the intrinsic nature of that sort of evidence. Although evidence of reputation does not in any true sense represent the personal opinion of the witness as to the character of the person involved, the public and the juries may regard it as such and gain the impression that the judge testifying to character is vouching for the person involved. This is definitely so in criminal prosecutions. To the public such instances may give the impression that the judge who testifies has become a partisan and is stepping down from his lofty position to vouch for the accused and lend the weight of his position to testimony which indicates his personal judgment and that the accused is not the sort of person who would commit the offense charged. These objections are aggravated where judges of high courts in the same judicial system as the trial court appear as character witnesses."

This position of the Committee does not reflect upon the judge who may be required to give testimony, but seeks to protect him from falling into an unfavorable light in the eyes of the public who, by virtue of his testimony, may have gained an impression that he is partisan. It is to preserve an image of

[2]However, a judge is not disqualified merely because he may have been subpoenaed as a witness, 64 ALR2d 609, or even when he is sworn as a witness but does not testify, State v. Bissell, 106 Vt. 80 (170 A 102), nor is he disqualified merely because his name may appear on the warrant as a witness, Wills v. Whittier, 45 Me. 544, or upon the indictment, Wilson v. State, 92 Tex. Cr. App. 144 (242 SW 229), for a contrary holding would enable any party, merely by the employment of such a device, to disqualify a judge when there is no real or proper basis for disqualification.

the judgeship as an impartial instrumentality in the administration of justice.

"The underlying principle of rules for disqualification of judges is that no judge should preside in a case in which he is not wholly free, disinterested, impartial and independent. Next in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge . . ." 48 CJS 1039, Judges, § 72. "Every litigant, including the State . . . is entitled to nothing less than the cold neutrality of an impartial judge." 30A Am. Jur. 56, Judges, § 89. And see State ex rel. Palmer v. Atkinson, 116 Fla. 366 (156 S 726, 96 ALR 539). "The principle of impartiality, disinterestedness, and fairness on the part of the judge is as old as the history of courts; in fact the administration of justice through the mediation of courts is based upon this principle. It is a fundamental idea, running through and pervading the whole system of judicature, and it is the popular acknowledgment of the inviolability of this principle which gives credit, or even toleration, to decrees of judicial tribunals." State ex rel. Barnard v. Board of Education, 19 Wash. 8 (52 P 317, 40 LRA 317, 67 ASR 706). It is one of the great principles of common law, which is everywhere recognized, and is embodied in the constitutions of some of the States. Moses v. Julian, 45 N.H. 52 (84 AD 114).

Asserting that a trial judge who has testified as a witness in a cause should recuse himself and refrain from further participation therein, the Court of Appeals of New York in People v. Dohring, 59 N. Y. 374, observed that this was not because any harm might otherwise come either to the People or to the defendant, but "because such practice, if sanctioned, may lead to unseemly and embarrassing results, to the hindering of justice, and to the scandal of the courts." Likewise, the Supreme Court of Vermont has declared: "If [the judge] had testified in the case it would have been his duty to leave the bench and to take no further judicial part in the trial." State v. Bissell, 106 Vt. 80, supra. The Supreme Court of Oklahoma, in Powers v. Cook, 48 Okla. 43 (149 P 1121) too felt that "it tends to lessen the dignity of the court, and bring it in disrepute," and that the

calling of the judge as a witness, unless in an instance of necessity to prevent a miscarriage of justice, is "wrong, both in principle and in morals." This view finds support among the text writers, Greenleaf, Jones, Wigmore, McCormick and others. Some excellent annotations are found in 52 ALR 1291, 10 ALR2d 1324 and 64 ALR2d 609.

In my judgment it is as incumbent upon the judge to avoid the appearance of partisanship or of partiality as it is to render what he believes to be a righteous and proper judgment. Consistently with my view of the matter I therefore disqualify.